UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVEN DRURY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| V. | ) C.A. NO. 03-11422-MLW |
| | ) |
| THE NEW ENGLAND REGIONAL COUNCIL OF | ) |
| CARPENTERS, CARPENTERS LOCAL UNION NO. | ) |
| 107, THOMAS HARRINGTON, ART SISKO, SIMON | ) |
| JAMES, and KENNEDY & ROSSI, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OF UNION DEFENDANTS IN
## SUPPORT OF THEIR MOTION TO DISMISS

Defendants New England Regional Council of Carpenters, Carpenters Local 107,

Thomas Harrington, Art Sisko and Simon James respectfully submit this memorandum in

support of their motion to dismiss.[1]

### STATEMENT OF FACTS

The following facts are taken from plaintiff's complaint, as well as from two

documents expressly referenced in his complaint, and those facts are assumed to be true for the

purposes of this motion only. Since plaintiff's complaint expressly references the two

documents, a provision of his union agreement and a letter that he received from the Union

(Complaint ¶¶ 9, 13), those documents are properly considered on this motion to dismiss

notwithstanding the fact that it requires going outside the pleadings. See Alternative Energy,

Inc. v. St. Paul Fire & Marine Ins., Co., 267 F. 3rd 30, 33-34 (1st Cir. 2001).

---

[1] Defendants are affiliated labor organizations and union officials and shall refer to themselves throughout this memorandum collectively as "the Union" solely for purposes of this motion to dismiss.

"threaten Drury of job lost if he did not give his SS# and sign forms." He alleges that "Drury call Union Hall. Drury was refuse union representation twice and then was layoff and told to leave the project" by the employer.

Drury also notes that, following his discharge by Kennedy & Rossi, he received a letter dated June 21, 2000 from the Union advising him that it would not process his grievance over the discharge and that, in addition, it would no longer refer him to contractors seeking referral from the Union of out-of-work members based on his persistent refusal to fill out the federal forms. (Complaint ¶13). The Union's letter also spells out in detail its reasoning in taking these steps and it merits reproducing here in its entirety.

Dear Brother Drury:

I am writing in response to your undated fax concerning your recent referral to and layoff by Kennedy & Rossi.

As we have explained many times before, our collective bargaining agreement permits employers to mandate that employees fill out and sign any pre-hire forms required by law and that, since the INS-9 and the IRS W-4 are required by federal law, employers who refuse to hire you or who lay you off for refusing to fill out and sign the forms are not violating the agreement. For this reason, we will not process a grievance concerning your discharge by Kennedy & Rossi.

As you know, the National Labor Relations Board in recently dismissing your unfair labor practice charge, expressly stated that the Union did not violate its duty of fair representation in refusing to process a grievance concerning your discharge by another employer under similar circumstances.

This is also to advise that, based on your persistent refusal to fill out and sign the federally mandated forms and the repeated problems that have arisen as a result of that refusal, we can no longer refer you to employment opportunities. As you know, this Union frequently receives requests from signatory contractors for referrals of unemployed carpenters on less than a day's notice. One important feature of our collective bargaining relationship with contractors is their ability to rely on the Union as a source of meeting fluctuating staffing needs on very short notice. A contractor who calls the Union for a referral of a carpenter the next day does so because the contractor needs to have an additional carpenter on the job and working the next day. Referring a carpenter who we know the contractor

3

## ARGUMENT

As previously established in the Union defendants' memorandum in opposition to plaintiff's motion to remand, the conduct about which plaintiff complains - - the Union's actions in connection with grievance handling and job referrals - - is union conduct that is governed exclusively by federal labor law. The United States Supreme Court has inferred the so-called "duty of fair representation" as a corollary to a Union's statutory authority under federal labor law to act as the exclusive collective bargaining representative of all employees in the bargaining unit. That authority carries with it the duty to represent all bargaining unit members fairly. See, e.g., Ford Motor Co. v. Huffman, 345 U.S. 330, 337 (1953); Vaca v. Sipes, 386 U.S. 171, 177 (1967); Air Line Pilots Assn., v. O'Neill, 499 U.S. 65, 74 (1991). The duty of fair representation completely preempts all state law relating to the Union's exercise of its representational authority such that, to the extent plaintiff has any claim against the Union in this case, it is *exclusively* a claim under the duty of fair representation. See, e.g. Condon v. Local 2944 United Steelworkers of America, 683 F.2d 590, 594-95 (1st Cir. 1982); BIW Deceived v. Local S6 Industrial Union of Marine and Shipbuilding Workers, 132 F.3d 824, 831-32 (1st Cir. 1997).

As an initial matter, plaintiff's claims are barred the limitations period for filing fair representation claims. In any event, even on the merits, the Union's conduct falls well within its duty of fair representation.

## A.    PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

Duty of fair representation claims are governed by a six month limitations period for filing claims. See DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151 (1983). As plaintiff concedes in his complaint, he received in June of 2000 the June 21, 2000 letter from the Union expressly advising plaintiff that it would neither process his grievance nor

refer him to contractors requesting referrals of out-of-work members based on his persistent refusal to sign the federal forms. (Complaint ¶13; Souris Decl., Exh. B). Since he waited nearly three years later to file this action, well beyond the six month statue of limitations, he is barred from raising these claims now.

**B.    PLAINTIFF'S DUTY OF FAIR REPESENTATION CLAIMS, EVEN ON THE MERITS, ARE UTTERLY BASELESS**

Even if one were to consider the merits of plaintiff's claims under the duty of fair representation, the conclusion is inescapable that his claims are entirely baseless. The Supreme Court has had many occasions to address and define the nature and scope of a union's duty of fair representation. It is beyond dispute that "a wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents...." Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953). It is also beyond dispute that a union does not breach its duty of fair representation by "taking a good faith position contrary to that of some individuals whom it represents nor in supporting the position of one group of employees against that of another." Humphrey v. Moore, 375 U.S. 335, 349 (1964). Finally, the Supreme Court has declared that, despite the duty to represent all bargaining unit members fairly, "we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement." Vaca v. Sipes, 386 U.S. 171, 191 (1967).

In evaluating a union's conduct of its representational activities under the duty of fair representation, it is well-established that mere negligence does not rise to the level of a breach. The Supreme Court has further defined the standards to be applied in evaluating union activity:

6

> We hold that the rule announced in <u>Vaca v. Sipes</u> - - that a union breaches its duty of fair representation if its actions are either "arbitrary, discriminatory, or in bad faith" - - applies to all union activity, including contract negotiations. We further hold that a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the transactions, the union's behavior is so far outside a "wide range of reasonableness," <u>Ford Motor Co. v. Huffman</u>, as to be irrational.

<u>Air Line Pilots Assn. v. O'Neill</u>, 499 U.S. 65, 67 (1991)(citations omitted). Under the facts and circumstances of the case, the Union's decisions that are reflected in its June 21, 2000 letter are not, as the Supreme Court requires, "wholly 'irrational' or 'arbitrary.'" <u>O'Neill</u>, 499 U.S. at 78. To the contrary, as set forth below, those decisions are eminently well-reasoned and proper.

The Union had every reason to believe, as it declared in its June 21, 2000 letter, that the IRS Form W-4 and INS Form I-9 are federally mandated forms within the meaning of Article 8, Section 5 of the Union agreement. In fact, federal tax law requires employees to have prospective employees fill out and sign the W-4 prior to hiring them. Thus, 26 U.S.C. §3402(f)(2)(A) states in mandatory terms that "on or before the date of the commencement of employment," the employee shall provide a signed "withholding exemption certificate," or Form W-4. In addition, federal tax regulations require a new employee, "on the day on which he enters the employ of another for wages," to give the employer at least his or her Social Security number if not formal documentation of the number and, if the employee is new to the work force and does not yet have a Social Security number, the regulations require the person to apply for one on Form SS-5. 26 C.F.R. §31.6011(b)-2(a)(1) and (b)(1).

With respect to the I-9, the Immigration Reform and Control Act of 1986 established an employment verification system pursuant to which employers are mandated to obtain from new employees a sworn statement "on a form designated or established by the Attorney General" containing certain information establishing their right to work in the United

7

States. 8 U.S.C. §1324a(b)(1) and (2). In 8 C.F.R. §274a.2(b)(1), Department of Homeland Security regulations mandate that employers must "ensure" that newly hired employees "[c]omplete Section 1 - - Employee Information and Verification - - on the Form I-9 at the time of hire."

Under these circumstances, the Union's belief that the W-4 and I-9 forms are federally mandated forms within the meaning of the collective bargaining agreement that must be filled out with Social Security numbers and signed was in no sense "wholly irrational."

The same is equally true of the Union's decision that it announced in its June 21, 2000 letter to Mr. Drury to cease referring him to signatory contractors requesting referrals of out-of-work members as long as he refused to fill out and sign the W-4 and I-9. The Union frankly explained the reasons for this decision in considerable detail in the letter. In the Union's view, sending a member who makes himself unemployable and unavailable to work by refusing to fill out federally and contractually mandated forms to unsuspecting contractors who are seeking carpenters on short notice to meet their immediate manpower needs seriously jeopardizes the working relationship developed between the Union and its signatory contractors. Critically, the Union feared that, if contractors needing members available to start work immediately are referred someone like Drury, who essentially is unemployable for refusing to disclose even a Social Security number, they are going to be reluctant to rely on the Union for such referrals in the future - - something that is obviously contrary to the interest of the Union's membership as a whole. As the Supreme Court in <u>Vaca</u> observed:

> The collective bargaining system as encouraged by Congress and administered by the NLRB of necessity <u>subordinates the interest of an individual</u> employee <u>to the collective interest of all employees in a bargaining unit</u>.

8

# Attachment A

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss.

SUPERIOR COURT
DEPARTMENT
CIVIL ACTION NO. 00-1002A

STEVEN R. DRURY,
Plaintiff

vs.

NATGUN CORP.,
Defendant.

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS

Plaintiff Steven R. Drury ("Drury") was terminated from defendant Natgun Corp. ("Natgun") in August, 1999. Drury has brought suit against Natgun claiming wrongful discharge, withholding of wages, interference with union relations, and violation of the Massachusetts Civil Rights Act. This case is now before the court on Natgun's motion to dismiss pursuant to Mass. R. Civ. P. 12(b)(6).

## DISCUSSION

When evaluating the sufficiency of a complaint pursuant to Mass. R. Civ. P. 12 (b)(6), the court must accept as true the well pleaded factual allegations of the complaint, as well as any inference which can be drawn therefrom in the plaintiff's favor. Fairneny v. Savogran Co., 422 Mass. 469, 470 (1996); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1981). "[The] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Nader v. Citron, 372 Mass. 96, 98 (1977).

"[A] complaint is not subject to dismissal if it would support relief on any theory of law." Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979). Further, a complaint should not be

*Entered & copied*
*mailed 11-13-00*

dismissed simply because it asserts a new or extreme theory of liability. New England Insulation Co. v. General Dynamics Corp., 26 Mass. App. Ct. 28, 30 (1988). All inferences should be drawn in the plaintiff's favor in the complaint "so as to do substantial justice." Ourfalian v. Aro Mfg. Co., Inc., 31 Mass. App. Ct. 294, 296 (1991).

1.    **Wrongful Discharge**

Drury alleges that he was wrongfully discharged for refusing to sign a W-4 withholding certificate and an I-9 verification document. Drury contends that this was in violation of his rights of free speech and freedom of religion as guaranteed by the Federal and State Constitutions.

Massachusetts disfavors the creation of duplicative remedies and does not allow a common law employee discharge claim based on public policy in cases where a comprehensive legislative remedy is available to the plaintiff. Melley v. Gillette Corp., 19 Mass. App. Ct. 511, 512-14 (1984). Common law public policy claims are barred in wrongful discharge cases where a state statutory remedy for the alleged public policy violation is available and provides a private cause of action. See Melley, 19 Mass. App. Ct. 511; Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 671 (1981); Foley v. Polaroid Corp., 381 Mass. 545, 553 (1980); Mello v. Stop & Shop Companies, Inc., 402 Mass. 555, 556-57 (1988). Because Drury has a remedy under G.L. c. 12, § 11I for violations of his right to freedom of speech and religion, his common law claim for wrongful discharge based on these violations must be dismissed.

2.    **Wrongful Withholding of Wages**

Drury alleges that Natgun improperly and illegally withheld funds from Drury's earnings. Drury contends that he was paid his wages but only after improper deductions were taken as a result of him refusing to sign the W-4 form. G.L. c. 149, § 150 governs compensation claims

2

and provides in pertinent part:

> "Any employee claiming to be aggrieved [with regard to wages, hours, or commissions] ... may, at the expiration of ninety-days *after the filing of a complaint with the attorney general, or sooner, if the attorney general assents in writing,* and within three years of such violation, institute and prosecute in his own name and on his own behalf ... a civil action for injunctive relief and any damages incurred ... ."

(emphasis added).

Through this provision, Massachusetts law mandates that all compensation claims must be filed with the Office of the Massachusetts Attorney General before any court may adjudicate such claims. Drury, therefore, must either file a complaint with the attorney general or seek the attorney general's written permission before filing his claim in this court. Accordingly, Drury's claim for wrongful withholding of wages must be dismissed.[1]

3.    **Interference with Union Relations**

Drury alleges that Natgun interfered with his relationship with the union of which he was a member. Drury contends that Natgun's actions in this respect were both willful and malicious and negligent. Natgun maintains that this claim is preempted by the National Labor Relations Act. Drury contends that he filed his claim with the National Labor Relations Board in Boston where it was dismissed and the dismissal affirmed on appeal. Drury now alleges that this court has jurisdiction over his claim.

The court need not decide at this point whether Drury's claim is preempted by federal labor law. In stating that Natgun interfered with his relationship with the union, Drury appears to

---

[1]Drury asserts that he was informed by the Office of the Attorney General that it did not have jurisdiction under G.L. c. 149, § 150 to consider his claim for wrongful withholding of wages. This blanket assertion, however, without more, is insufficient proof under c. 149, § 150 to allow Drury to file his claim in this court.

3

be alleging a claim for interference with contractual relations both negligent and intentional. Massachusetts does not recognize the tort of negligent interference with contractual relations. As to Drury's claim of intentional interference, the complaint does not allege facts necessary to prove such a claim. See Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 122 (2000) (in such an action plaintiff must prove that he had contract with third party, defendant knowingly induced third party to break contract, defendant's interference was improper in motive and means, and plaintiff harmed by interference). Accordingly, Drury's claim for interference with his relationship with the union must be dismissed.

4.    **Massachusetts Civil Rights Act, G.L. c. 12, § 11I**

Drury alleges that Natgun attempted to interfere by threats, intimidation and coercion with his exercise or enjoyment of his rights to freedom of speech and religion secured by the Federal and State Constitutions by conditioning his employment on signing the W-4 and I-9 forms.

Drury does not allege, however, any conduct by Natgun, or its employees, that would constitute threats, intimidation, or coercion as required under the Massachusetts Civil Rights Act. See Webster v. Motorola, Inc., 418 Mass. 425, 420 (1994) (threatening loss of at-will position not actionable conduct); Longval v. Commissioner of Correction, 404 Mass. 325, 333 (1989) (direct violation of person's rights does not involve threats, intimidation or coercion). Accordingly, Drury fails to state a claim under the Act and the claim must be dismissed. See Rosenfeld v. Board of Health of Chilmark, 27 Mass. App. Ct. 621, 627 (1989) (since complaint fails to allege conduct amounting to threat, intimidation or coercion, it must be dismissed).

4

## ORDER

For the foregoing reasons, it is hereby **ORDERED** that defendant's motion to dismiss is

**ALLOWED**.

James P. Donohue
Justice of the Superior Court

November 10, 2000

5