UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVEN DRURY,<br><br>    Plaintiff,<br><br>V.<br><br>THE NEW ENGLAND REGIONAL COUNCIL OF CARPENTERS, CARPENTERS LOCAL UNION NO. 107, THOMAS HARRINGTON, ART SISKO, SIMON JAMES, and KENNEDY & ROSSI, INC.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) C.A. NO. 03-11422-MLW<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OF UNION DEFENDANTS IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Defendants New England Regional Council of Carpenters, Carpenters Local 107, Thomas Harrington, Art Sisko and Simon James, respectfully submit this memorandum in opposition to plaintiff's motion to remand this action to the state court from which it was removed.

## BACKGROUND

Plaintiff's claims center on the meaning and application of a provision of his Union's collective bargaining agreement, and on the Union's exercise of its representational authority and duties with respect to him. Accordingly, his claims are governed exclusively by federal labor law, which entirely displaces state law under the "complete preemption" doctrine. To the extent plaintiff has any claims, they are exclusively federal claims and defendant properly removed the action to this court.

Plaintiff essentially alleges that defendant Kennedy & Rossi fired him under a provision of its collective bargaining agreement with the Union for refusing to fill out and sign the IRS Form W-4, and that the Union refused his request to represent him by challenging the discharge under the grievance provisions of that collective bargaining agreement.

Thus, the dispute centers on, as Drury notes, Article 8, Section 5 of the Union's collective bargaining agreement. (Complaint, ¶9). That section provides that "Carpenters shall not be required to fill out or sign any forms, whether before or after being hired, except those required by Federal and State law...." (Souris Declaration, Exh. A at 17).

In paragraph 9 of the complaint, he alleges that the Union has taken the position, with which he personally disagrees, that under the terms of the Union's collective bargaining agreement employers can require new employees to fill out and sign the IRS Form W-4 and the INS Form I-9:

> [Union Business Agent] Sisko has stated that under art. 8 section 5 of the Carpenters agreement Sisko Can and does compel a member to sign w-4 and provide information for I-9 forms including SSA or SS# [social security number]. *Drury Disagrees.*

(Complaint, ¶ 9)(emphasis added). In addition, he claims that he has "Rescinded his social security number," and that "a citizen does not have to have a SSN." (Complaint, ¶1). He also views the IRS Form W-4 and INS Form I-9 to be "voluntary forms" that new employees do not have to fill out and sign if they do not want to do so. (Complaint, ¶ 13).

He alleges in paragraph 13 of his complaint that the Union referred him to a Kennedy & Rossi project where the employer demanded that he fill out and sign the standard IRS Form W-4 and INS Form I-9 for new employees. He alleges that he "provided his own documents" instead, which the employer refused to accept. He alleges that the employer

"threaten Drury of job lost if he did not give his SS# and sign forms." He alleges that "Drury call Union Hall. Drury was refuse union representation twice and then was layoff and told to leave the project" by the employer.

Several other documents that Drury has filed in this action confirm that the meaning and application of the Union's collective bargaining agreement is central to his claims. Thus, in this Emergency Motion to address Conflict of Interest, in which he asks that the Union's counsel be disqualified, plaintiff states as follows:

> [T]he plaintiff feels that the contract agreement in which the plaintiff is signatory is vague in its terms right from the beginning of its drafting and state so to his union.

In view of the need to interpret the collective bargaining agreement, plaintiff intends to call the Unions' attorney as a witness "to explain the terms and meaning of the contract." (*Id.*).

Similarly, in his Emergency Motion to Remand, he states that the case should be remanded because the Union's collective bargaining agreement "is a state agreement which provides for the jurisdiction of the state court." In a supplemental "Addendum" that he filed in connection with the motion to remand and other matters, he states that "plaintiff works under a contract agreement" that operates only in Massachusetts "within the state jurisdiction," and that the case should be remanded to the state court "where by the plaintiff has remedy within the contract agreements which is under its jurisdiction of the state of Massachusetts."

Plaintiff filed his complaint in state court over Kennedy & Rossi's termination of his employment and over the Union's refusal to represent him, pleading claims under state civil right laws. Defendant NERC, with the assent of all defendants, removed the action to this court. Plaintiff now moves to remand the action back to the state court.

3

## ARGUMENT

According to plaintiff, the case should be remanded because all the contractors who are signatory to the Union collective bargaining agreement that governs his claims allegedly operate under that agreement only within the state of Massachusetts. The question here, however, is a question of subject matter jurisdiction. As set forth below, regardless of where a Union's collective bargaining agreement operates, questions or claims concerning the agreement as well as concerning the Union's representation of its members under that agreement are questions and claims that are governed, as set forth below, *exclusively* by federal labor law. Indeed, federal labor law governs the claims against both the employer and the Union in this case to such an extent that it entirely displaces state law under the "complete preemption" doctrine.

In <u>Franchise Tax Board v. Construction Laborers Vacation Trust</u>, 463 U.S. 1 (1983), the Supreme Court engaged in a detailed review of different types of federal preemption to determine whether the claims pled under state law in that particular case nevertheless could be deemed to "arise under" federal law for purposes of removal pursuant to 28 U.S.C. § 1441. In doing so, the Supreme Court expressly distinguished between two very distinct types of federal preemption: one involving state claims to which federal preemption merely provides a defense, and another involving state claims that are "completely" preempted by federal law to the extent of entirely displacing the state law. Federal preemption of the latter type, "complete" preemption, leaves the plaintiff with a claim that is governed exclusively by federal law, and such a claim "arises under" federal law for removal purposes.

In <u>Franchise Tax Board</u>, the Court concluded that the state's action to enforce a tax levy was of the former type, i.e., it involved a type of state claim to which federal preemption provided merely a defense. A state tax agency had sued a fringe benefit fund that was governed

4

by the federal Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001, et seq., in an effort to enforce personal income tax levies on assets held by the fund in trust for a delinquent taxpayer who was also a fund beneficiary. The fringe benefit fund removed the action on the basis of federal preemption under ERISA. The Court noted, however, that:

> California law establishes a set of conditions, without reference to federal law, under which a tax levy may be enforced; federal law becomes relevant only by way of a defense to an obligation created entirely by state law, and then only if appellant has made out a valid claim for relief under state law.

Franchise Tax Board, 463 U.S. at 13. The Court determined that this type of state claim, in which federal law operates only as a defense, remains a state claim in nature notwithstanding the federal defense, does not "arise under" federal law, and is not subject to removal.

In reaching this conclusion, the Court pointedly contrasted such claims with another type of state claim that is affected by federal law to such an extent that, in the Court's words, the purported state claim "is 'really' one of federal law." Id. at 13. In such a case, "the preemptive force of [the federal law in question] is so powerful as to <u>displace entirely any state cause of action</u>." Id. at 23 (emphasis added). This type of claim "arises under" federal law <u>exclusively</u>, and is removable under 28 U.S.C. § 1441.

In making this distinction and explaining the doctrine of "complete" preemption, the Court in Franchise Tax Board cited the example of Labor Management Relations Act ("LMRA") Section 301, 29 U.S.C. § 185, which provides a federal cause of action for enforcement of collective bargaining agreements between unions and employers. In an earlier decision, Avco Corp. v. Aero Lodge No. 735, International Association of Machinists, 390 U.S. 557 (1968), the Court had concluded that, in LMRA Section 301, Congress intended to completely preempt state contract law as it may apply to collective bargaining agreements and

that, accordingly, any claim to enforce a labor agreement is a claim arising *solely* under the laws of the United States and is removable under Section 1441. Avco, 390 U.S. at 559-60.

The Court in Franchise Tax Board concluded that:

> The necessary ground of decision [in Avco] was that the preemptive force of Section 301 is so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization." Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of Section 301. Avco stands for the proposition that if a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily *"arises under" federal law.*

Franchise Tax Board, 463 U.S. at 23-24 (emphasis added). Federal law, the Court in Franchise Tax Board noted, had "supplied the plaintiff in Avco with a federal clause of action to *replace* its preempted state contract claim." Id. at 26 (emphasis added). As a result, "even in state court, any action to enforce a [labor] agreement within the scope of Section 301 would be controlled by federal law." Id. at 23.

Moreover, the Supreme Court has determined that the congressional policy of establishing a uniform body of federal law involving labor agreements is so strong that federal labor law will completely preempt state law even in cases where the plaintiff's state law claim is not one purporting to enforce a collective bargaining agreement. Thus, in Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985), the Court held that:

> If the policies that animate §301 are to be given their proper range, however, the preemptive effect of §301 *must extend beyond suits alleging contract violations.*

471 U.S. at 210 (emphasis added). The Court noted that, regardless of the nature of the state law claim in which they may arise, "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement,

6

must be resolved by reference to uniform federal law...." 471 U.S. at 211. Accordingly, the Court held that even state law claims other than traditional contract claims are preempted by §301 when evaluation of the state claim "is *inextricably intertwined* with consideration of the terms of the labor contract." 417 U.S. at 213 (emphasis added).

The Supreme Court in <u>Allis-Chalmers</u> also reasoned that broadly applying Section 301 preemption to state law claims beyond traditional contract claims was necessary to "preserve the central role of arbitration in our system of industrial self-government." 471 U.S. at 219 (quotation marks omitted). The Court expressly noted that "unfair discharge" claims were within "the whole range of disputes [that are] traditionally resolved through arbitration...." Id. It would be too easy to avoid the mandatory grievance and arbitration procedures of collective bargaining agreements if an employee could simply recast a contractual grievance into some other form of state law claim:

> A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness, as well as eviscerate a central tenet of federal labor-contract law under §301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance.

471 U.S. at 220.

Reduced to its essentials, Drury's complaint is nothing but a wrongful termination claim that is precisely the kind of claim that federal labor policy under Section 301 requires be confined to the grievance and arbitration provisions of collective bargaining agreements and governed *exclusively* by federal labor law. A collective bargaining agreement that Mr. Drury himself invokes in his complaint authorizes employers to make his employment conditioned on filling in and signing forms required by federal law. Drury expressly states in his complaint that "Drury disagrees" with his Union's and Kennedy & Rossi's interpretation of that clause of the

7

agreement. (Complaint ¶9). But the fact remains that the question undeniably is governed by the collective bargaining agreement and federal law. Indeed, the employer terminated Drury under the disputed provision of the collective bargaining agreement, and the Union refused to file a grievance to enforce Drury's interpretation of the meaning of that agreement. Despite being framed as a civil rights claim, one could hardly have a claim that is more "inextricably intertwined with consideration of the terms of the labor contract." Allis-Chalmers, 471 U.S. at 212. Accordingly, there can be no doubt that plaintiff's state law claims in this case are completely preempted by Section 301.

Finally, with respect to the Union defendants, plaintiff complains that the Union refused to represent him by filing a grievance under its collective bargaining agreement after Kennedy & Rossi fired him for declining to sign the federal forms. Filing grievances on behalf of members under collective bargaining agreements is a core representational function of a labor union. Under federal labor law, unions enjoy the status and authority of being the exclusive representative of all bargaining unit members for collective bargaining purposes. The United States Supreme Court has held that, as a corollary to that right of exclusive representative status, unions owe all bargaining unit members an implicit federal statutory duty to represent them fairly - - the so-called "duty of fair representation." See, e.g., Ford Motor Co. v. Huffman, 345 U.S. 330, 337 (1953); Vaca v. Sipes, 386 U.S. 171, 177 (1967); Airline Pilots Assn., v. O'Neill, 499 U.S. 65, 74 (1991).

It is now well-established that the duty of fair representation not only has preemptive force, but that, like Section 301 preemption, it is such that it completely displaces state law under the "complete preemption" doctrine and therefore establishes federal question jurisdiction for removal purposes. In Condon v. Local 2944, United Steelworkers of America,

683 F.2nd 590 (1st Cir. 1982), the court held that, with respect to a "union's rights and duties as the exclusive bargaining agent in <u>carrying out its representational functions</u>..., Congress has <u>occupied the field</u> and <u>closed it to state regulation</u>." Id., 683 F.2d at 594-95 (internal quotation marks omitted; emphasis added).

More recently, in <u>BIW Deceived v. Local S6 Industrial Union of Marine and Shipbuilding Workers</u>, 132 F.3rd 824 (1st Cir. 1997), the court squarely reaffirmed that duty of fair representation preemption operates to completely preempt state law as it might apply to a union acting in its "representational" capacity such that it provides federal district courts with removal jurisdiction:

> We believe that DFR preemption operates in much the same fashion as [LMRA] section 301 preemption. While we have not heretofore inquired whether DFR preemption, like section 301 preemption, works an exception to the well-pleaded complaint rule, the answer seems obvious. Because federal law completely governs the duties owed by an exclusive collective bargaining representative to those within the bargaining unit, and because this manifestation of congressional will so closely parallels Congress's intention with regard to section 301, we hold that a district court possesses federal question jurisdiction when a complaint, though garbed in state-law raiment, sufficiently asserts a claim implicating the duty of fair representation. We also hold, as a logical corollary, that DFR preemption warrants resort to the artful pleading doctrine.

132 F.3d at 31-32 (citations omitted). Needless to say, this preemption extends to state law claims alleged under the Massachusetts Civil Rights Act. See <u>Marsman v. Western Electric Co.</u>, 719 F.Supp. 1128, 1141 (D. Mass. 1988).

Accordingly, there are multiple, independent bases under the complete preemption doctrine for federal question and federal removal jurisdiction of plaintiff's claims in this case, notwithstanding his effort to plead them solely as state law claims. There can be no

9

question that this action was properly removed and that plaintiff's motion to remand must be denied.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to remand this action back to the state court from which it was removed should be denied.

Date: September 12, 2003

Respectfully submitted,

Christopher N. Souris
BBO #556343
KRAKOW & SOURIS, LLC
225 Friend Street
Boston, MA 02114
(617) 723-8440
Facsimile: (617) 723-8443

_____
Attorney for defendants New England Regional Council of Carpenters, Carpenters Local 107, Thomas Harrington, Art Sisko and Simon James

## CERTIFICATE OF SERVICE

I, Christopher N. Souris, hereby certify that I caused a copy of the foregoing to be sent by first class U.S. mail this 12th day of September, 2003 to Steven R. Drury, 18 Drury Lane, Templeton, MA 01468, Gretchen Hamilton, attorney for Kennedy & Rossi, Inc., One Maguire Road, Lexington, MA 02321 and Douglas W. Phillips, Holland & Knight, 10 St. James Street, Boston, MA 02116.

_____
Christopher N. Souris