United States District Court

District of   Commonwealth of Massachusetts republic " Boston '

---

Steven Roland Drury        Plaintiff          Civil action # C A No .03 -11422-MLW

VS

Defendants

The New England regional Council of Carpenters,

Carpenters local 107 Mr .Art Sisko (in his personal capacity          **Affidavit in Support**

Simon James (in his personal capacity )                               **of Memorandum**

Thomas Harrington  (in his personal capacity )

Kennedy & Rossi , Inc  and owners  ( not known )    **(SS:)**

---

Now Comes the plaintiff  In propria persona, Steven Roland Drury, who is of sound mind and sincere soul.

1. Steven R. Drury is your Affiant and is further known as Affiant.

2.  Affiant's beliefs are held as in his pleadings as to himself  and to his rights to be heard.

3. The Affiant brings his case in personam  In rem jurisdiction  and asserts all his rights and waves none.

4. Affiant swares to the following Memorandum as to his own beliefs in part and furthers his statement here in.

5. Affiant to include his religious objections and beliefs to be sincere and reasonable.

6. Affiant incorperates his pleading  (all) filed  as his.

7. Affiant has exhausted All Administrative remidies known and now relies upon this court for remedy.

Further, Affiant Sayeth Naught.

Signed by his own hand, Steven R. Drury, Affiant swears to the facts above as being first hand knowlege and Truth under the penalties and pains of perjury for and within the united states of America, on this _27_ day of October, 2003, in front of _Debra L Caisse_, Notary Public.

_____
Steven R Drury

_____
Notary Public

**DEBRA L. CAISSE**
**NOTARY PUBLIC**
**MY COMMISSION EXPIRES FEB. 27, 2009**

United States District Court

District of   Commonwealth of MaSocial Security Administrationchusetts republic "

Boston '

---

Steven Roland Drury       Plaintiff

VS

Defendants

The New England regional Council of Carpenters,

Carpenters local 107 Mr .Art Sisko (in his personal capacity

Simon James (in his personal capacity )

Thomas Harrington  (in his personal capacity )

Kennedy & Rossi , Inc  and owners  ( not known )

Civil action # C A No .03 -11422-MLW

**Supportive Memorandum by**

**Plaintiff,**

**Motion to strike Defendants**
**Motion for Dismissal**
**pursuant to FRCP**
**12b6**

---

## Motion to Strike  Dismissal  for Cause

1 Plaintiff filed  a civil rights  case in state court (sjc ) where by the Union and its agents in their personal  capacities and as agents have violated the Plaintiff's rights.  The signatory company being Kennedy and Rossi  have  violated  Plaintiff's  rights  under the Massa- chusetts  Constitution  as well as the united States  Constitution and the Social Security adminstration ,   dischargeing the Plaintiff  with out legal cause .

Defendants have attempted to prevent  by conspiracy and  oppression,  knownly injured the Plaintiff by threats  or intimidation  of loss of work and  opportunities   ( referals for the hall ) further,

2 Plaintiff's right to life, liberty and the pursuit happiness, right to earn a living and his right to control his property by owning and taking measures upon his behalf only to be threaten ( loss of employment ) or force by the defendant. This right to be fairly given referrals has been taken and denied by the Defendants. the right to work has been taken away by the employer Kenndey and Rossi ing, The Defendants acts are without authority of law. and in concert    The Defendants acts are on going to present date with out the authority or enforcement of law. they have stop the plaintiff form working within the union of signatory contracts who all in concert will not hire the plaintiff Plaintiff's rights have been violated due to discharging and not being given referals from the Union hall. Unin refuseing to hear and act upon the facts for the plaintiff The Plaintiff's retairment and benifits have been denied along with his right to work in the Union. Plaintiff demands a trial by jury and that remedy be paid to the Plaintiff for his damages caused by the acts of the Defendants.


3 Defendants claim that the only circumstance Plaintiff can bring a claim (in Law ) upon the Union is for the **duty of fair representation** which has a 6 mo fileing date. **This is Case is not about fair representation** The Union is worthless as to repersentation in the opinion of the Plaintiff. Plaintiff filed a civil rights case and Gave warning and notice to the Defendants. Plaintiff's Rights have been violated. Plaintiff has informed the Defendants. Defendants never acted in good faith while the Plaintiff has tried many times to inform the Defendants who were in control of Plainitff's work assignments, and, to the present day refuse to allow Plainitff right to protection (in law ).
Plaintiff believes the Defendants have acted, in fact, criminaly under federal law. (see USC Title 42 chap 7 sec 408 sup A-8 * (8 )being a felony) Defendants have revealed, forcing Plaintiff to use a Social Security # (SS#) to private employers, corperation heath insurance, the use of a SS# without Plaintiff's permission on insurances, health and Union documents. ...Plaintiff worked in the jurisdiction of the state of Massachusetts republic with a private employer, without the United States

within its federal jurisdiction. or upon its territory and as far as the plaintiff knows the state has not serrender its jurisdiction where the acts of the defendants has been done The plaintiff at all times incorperates this jurisdiction issue in his pleading that the **federal government has no jurisdiction in this case**

4 The Defendant's cite Title 26 USC 3402 (f) ( 2) ( A) in part, That the person I D is the Plaintiff. The Defendants rely that the employee is the subject who shall be subject to this code site under IRC and this is the Plaintiff. However, This is not true nor does this code apply to the Plaintiff, nor can the code be read one regulation at a time. The code must be read in light of 4 corners doctrine. That section 3402 is only part of a direction and the wording must be defind as to the meaning of the code and to whom it applies. However, Section 3402 is a collection for SOCIAL SECURITY ADMINISTRATION taxes in part for "only "coverd employees who volunteer or decide to become subject to subtitle C taxes. o are required as to non residents aliens This Tax only applies to human beings who wish to be covered under the SSA act, however, non resident aliens, foreign person, who must apply for numbers under Title 26-, 301-6109 in general would apply this to US citizenship and or who want to take a benifit or are required by law . There is no law however that requires every human being ( native born within 50 states , without the united States corp " to wit : Citizen " ) to apply or become subject to SSA or be force take a benifit form the government Under the SOCIAL SECURITY ADMINISTRATION system. **SSA , is Voluntary system** , however the defendants feel it is a requirement of every one which is no true and have force the plaintiff out of the system within the union and has given no support or ear

5 The Defendants claim that a person ( must/or shall) apply for a SS# by way of a SS-5 form and that under the regulation section 31.601(b) the Defendants claim, under IRC sect . 6109 (d ) for the purpose of 205( c) ( 2) (A) of the act, be used as an identify number for federal tax laws. However the law or ragulation under 301.6109-1 says that only aliens need have or are required to supply identify numbers. Under the regulations an employer who doens't receive any SS# only needs to supply a written affidavit when they

file there form 941( EQFTR) no fines apply to the employer. 6109 (a) supplying of ID numbers (3) states anyone required under the authority of this title to make a return , statement , , or

The Plaintiff is not a required person under this section  as it is Plaintiff's belief the Defendants can not show he is the required person to have an identifying number.


6 the Defendants claim that the W-4 is part of the intention of the Union contract which states to wit " **Art 8 sect 5 Carpenters shall not be required to sign any forms , whether before or after being hired , except those required by federal and state law , with the exception of acknowledging the receipt of copies of company policies regarding sexual harassment and or safety"** AS anyone can plainly see this statement would require a legal statute be supplied.  The Plaintiff agrees with this statement  the W-4  does not identify any statue(s) that require supplying of Identifying numbers  or statue (in law ) to sign or not to sign and  would depend upon  to whom it applies nor does it give the authority (in law ) to any agent or person ( Defendants ) in the Union or signatory contractors of the Union  permission to enforce any law by punishment of its brother member Drury the Plaintiff by withholding employment in any way. This is what the law suit is based . It is for this reason the Plaintiff  would and should have a remedy in a court of law  base upon relief  entitled to Plaintiff.

The Plaintiff  moves the honable court to strike the Defendants motion to dismiss Plainitff's case  for 12.b rule,  futher the Plaintiff has a right and can prove facts (in Law) to support Plainitffs cliam and does not have to make a Summory Judgement,   which in fact the Defendants have not proven  their case,  as to does a citizen have to sign  W-4 , I-9 , and give a SS#  to be allowed to work  within and without the united states of America  and within the 50 States there of.    The Defendants  Can not show any  facts that would allow then to refuse  a {native born Citizen  in the republic of Massachusetts ) to perform  a duty  or given paper work  as to W-4 and I-9 and SS#  as a condititon of employment .

No where  in the Kennedy pre employment forms  does it require a Union member to sign W-4 or I-9 forms or under demand  give a SS# which the Plaintiff was  discharged.

The Defendants have not given the court the full consideration and regulations to judge upon.

This is a fact and their motion should be dissmissed for lack of such because if they had it they would prove the Plaintiff case wrong.


7 The Defendants do not explain 3402 (n) or 3402( p) and 3402 (a) ( 1) whereby it states **"Except as otherwise provided in this section** > here is a very important section. Section 3402(p) states (p) Voluntary withholding agreements ( W-4) (1) certain federal payments (A) In General. If at the time a specified Federal payment is made to any person a **Request** ( by such person ) is in effect that such payments be subject to withholding under this chapter , then for the purpose of this chapter and so muh of subtitle F as relates to this chapter , such payments shall be treated as if it were payments of wages by the employers to the employee and **only if the employer and employee agree to such withholding.**

**see 26 CFR ss 31- 3402 (p) -1** without permission by the employee the employer (The Defendants are guilty of unlawful conversion of the property of the employee) 3402 (b) provides for income tax withholding, regulation Title 26 IRC , 1-1441-5 would exempt citizen form subtitle A income tax by providing a state ment of citizenship in general to the employer in the case <u>Long vs Rasmussen 281. F 236 ( 1922) stated at 238</u>


<u>" the revenue laws are a code or system in regulation of tax assessments and collection .They related to Taxpayers and not to non taxpayers .The latter are without their scope No procedure is presribe for nontaxpayers and no attempt is made to annul any ofthere rights and remedies in due course of law . with them Congress does not assume to deal , and they are neither of the subject nor the object of the revenue laws</u>


The Internal Revenue manual says the following .......in section 4. 10. 7. 2. .9 .8 (05-14- 1999) decision made at various levels of the courts system are considered to be interpretations of tax laws and may be used by either examiner or taxayer to support a position <u>I N , the case Jack Cole v McFarland 337 S.W. 453 see whole case</u>

In other matters  the W-4 has within it a statement under penalty of perjury that act requires a human being  to wave his 5th amend right  and he or she  must have full knowledge of the circumstantial pleadings to wit the human is committing.

The Plaintiff  finds this violated the Bible as well as his rights  and may be helpful targeting  government agency or impeachment material in economic status  upon circumstantail evidence.   One more reason why the Plainiff refuses to sign W-4.

Plaintiff feels he is being compelled " peoage " as a condition of servitude  compelling the Plaintiff to perform labor in order to pay off a government debt  by the Defendants.

The Plaintiff is not in slavery nor has a duty or obligations under any contracts.

Plaintiff is a "freeman " with the only contract in law being  the US Constitution and thereof the state  constitution of Massachusetts.

Involuntary servitude means a condition of servitude In which the victim is forced to work or provide a sum to another by use of threat or condition or coercion or restraint.   To sign a W-4 as a condition of employment would be unlawful to citizen (natives born in 50 states / or non -taxpayers )

The Defendants claim that a private employers has a right to the SS# of the employee This is not true  see RM 00201.0058 , The SS# policy general procedures  see section E. Individuals should be advised that there is no legal requirement that they ( person's) Give a private organization their SSN.   It is also  a violation of law under the Privay Act of 1974 (p.l 93-579); provides that No penalty shall attach to any right , benefit or privilege provided by law because the individuals refusal to gve or disclose their SS# to a private or even federal or state government agency.

**The Defendants  are not government agencies  and have no lawful authority to enforce their  will on the Plaintiff by halting work  for reasons,   even  invading  the right s of the Plaintiff by his refusing  to not provide  a SS# on such documents as W-4 /I-9 form  and or signig such forms as a requirement of law and or   to sign W-4**

or I-9 or release a SS# to a private organization such being a Union or employer (
the Defendants )

Plaintiff has exhausted ALL Administrative avenues, via the Union Administration
itself, the EEOC, NLRB and relies upon this Honorable Court for remedy. Plainitff
has been refused answers by the Union

The plaintiff incorperates the exhibit title< _statements of facts and
beliefs regarding the individual income tax_    /- 75 p4

into his facts that support plaintiffs pleading and theory of law   a complaint is
not subject to dismissal if it would support any relief  any theory of law
plaintiff has given  subject matter  to support his views and opinions
and regulation  in law

Respectfully Submitted,

Steven R. Drury, Plaintiff

## Proof of Service

I Steven Roland Drury did serve a true and correct copy of the Motion to
Strike//Defendant/Supportaive Argumernt by Plaintiff.  by united States mail to Douglas
Philips, 10 St. James Ave. Boston, MA 02116; representation for Kennedy & Rossi,  and
Christopher Souris, 225 Friend St., Boston, MA  02114; representative for New England

Region of Carpenters local 107, Thomas Harrington, Art Sisco and Simon James on this

___25_____ day of October, 2003

Steven Roland Drury

c/o 18 Drury lane

Templeton , Massachusetts republic  federal zone inf. only [ 01468]

# STATEMENT OF FACTS AND BELIEFS
# REGARDING THE INDIVIDUAL INCOME TAX

## FIRST BELIEF:
## THE RIGHT OF REDRESS OF GRIEVANCES INCLUDES THE RIGHT OF REDRESS BEFORE PAYMENT OF TAXES.

1. The Right of **Redress Before Taxes** lies in the hands of the People.
2. This Right is the People's non-violent, peaceful means to procuring a remedy to their grievances without having to depend on – or place their trust in -- the government's willingness to respond to the People's petitions and without having to resort to violence.
3. As our Founding Fathers explicitly noted, retaining and keeping in our possession the money that we would otherwise have turned over to the government is the only real practical, non-violent method to corral those that have seized power from the People without the People's consent:

> *"If money is wanted by Rulers who have in any manner oppressed the People, they may retain it until their grievances are redressed, and thus peaceably procure relief, without trusting to despised petitions or disturbing the public tranquility."*[1]

4. From 1999 thru 2002 the People have properly petitioned for a Redress of Grievances regarding the federal income tax system. The Executive and Legislative branches have utterly failed to honor their obligation to respond.

## SECOND BELIEF:
## THE INCOME TAX IS A TAX ON LABOR, PROHIBITED BY THE 13TH AMENDMENT

1. It was the intent of Congress to require "individuals" to make income tax returns based upon receipt of more than a threshold amount of gross income even if the individual ends up not "liable for" a tax on that gross income. [*See* 26 U.S.C. 6012 (a).]
2. The "gross income" mentioned in Section 6012 of the Internal Revenue Code is the "gross income" as set forth at Section 61(a) of the Internal Revenue Code. (*See* 26 U.S.C. Sections 61(a) and 6012.)

---

[1] See, "Continental Congress To The Inhabitants Of The Province Of Quebec." Journals of the Continental Congress. 1774 -1789. Journals 1: 105-13.

1

corporation...**Flint v. Stone Tracy Co.**, 220 U.S. 107, 55 L.Ed. 389, 31 Sup.Ct.Rep. 342, Ann. Cas."

[*See **Stratton's Independence v. Howbert**, 231 U.S. 399, 414, 58 L.Ed. 285, 34 Sup.Ct. 136 (1913) (emphasis added)].

8. The term "corporation" as used above infers a federally chartered and not a state chartered corporation.

9. The United States Government is defined as a federal corporation:

   United States Code

   TITLE 28 - JUDICIARY AND JUDICIAL PROCEDURE

   PART VI - PARTICULAR PROCEEDINGS

   CHAPTER 176 - FEDERAL DEBT COLLECTION PROCEDURE

   SUBCHAPTER A - DEFINITIONS AND GENERAL PROVISIONS

   Sec. 3002. Definitions

   (15) **"United States" means** -

   (A) **a Federal corporation**;

   (B) an agency, department, commission, board, or other entity of the United States; or

   (C) an instrumentality of the United States.

   (*See* 26 U.S.C. 3002)

10. Individuals as defined in Subtitle A of the Internal Revenue Code and in 26 CFR §1.1441-1 are not federal corporations, and therefore cannot have "profit" or "gain" as constitutionally defined above.(*See* 26 CFR 1.1441-1)

11. In the absence of gain, there is no "income." [*See Stratton's Indep. v. Howbert*, 231 U.S. 399 (1913); *Doyle v. Mitchell*, 247 U.S. 179 (1920); *So. Pacific v. Lowe*, 247 U.S. 330 (1918); *Eisner v. Macomber*, 252 U.S. 189 (1920); *Merchant's Loan v. Smietanka*, 255 U.S. 509 (1921)]

3

and right embraces the right to make contracts for the purchase of the labor of others and equally the right to make contracts for the sale of one's own labor.

19. Congress recognizes at Section 64 of the Internal Revenue Code that "ordinary income" is a gain from the sale or exchange of property. (*See* 26 U.S.C. 64.)

20. Internal Revenue Code Sections 1001, 1011 and 1012 provide the method Congress has set forth for determining the gain derived from the sale of property. (*See* 26 U.S.C. Sections 1001, 1011, and 1012.)

21. Section 1001(a) states that: "The gain from the sale or other disposition of property shall be the excess of the amount realized there from over the adjusted basis provided in section 1011 for determining gain . . . ." [*See* 26 U.S.C. ° 1001(a)]

22. Section 1001(b) states that: "The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received." [*See* 26 U.S.C. 1001(b)]

23. Section 1011 states that: "The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis (determined under section 1012...), adjusted as provided in section 1016." (*See* 26 U.S.C. 1011.)

24. Section 1012 states that: "The basis of property shall be the cost of such property . . . ." (*See* 26 U.S.C. 1012.)

25. The cost of property purchased under contract is its fair market value as evidenced by the contract itself, provided neither the buyer nor seller were acting under compulsion in entering into the contract, and both were fully aware of all of the facts regarding the contract. [*See Terrance Development Co. v. C.I.R.*, 345 F.2d 933 (1965); *Bankers Trust Co. v. U.S.*, 518 F.2d 1210 (1975); *Bar L. Ranch. Inc. v. Phinney*, 426 F.2d 995 (1970); *Jack Daniel Distillery v. U.S.*, 379 F.2d 569 (1967); *In re Williams' Estate*, 256 F.2d 217 (1958)].

26. In the case of the sale of labor, none of the provisions of Section 1016 of the Internal Revenue Code are applicable. (*See* 26 U.S.C. 1016.)

27. When an employer pays the employee the amount agreed upon by their contract, there is no excess amount realized over the adjusted basis, and thus no gain under Section 1001 of the Internal Revenue Code. (*See* 26 U.S.C. 1001.)

28. If one has no gain, one would have no income in a constitutional sense. (*See* 26 U.S.C. 64) (26 U.S.C. 1001)

29. If one has no income, one would have no "gross income."

44. The rate of the tax set out at Section 3101 of the Internal Revenue Code is a percentage of the individual's wages. (*See* 26 U.S.C. 3101.)

45. The term "income" as used at Section 3101 of the Internal Revenue Code is the same income as used in Subtitle A of the Internal Revenue Code. (*See* 26 U.S.C. 3101; Title 26, United States Code, index.)

46. If one has no income, one is not subject to the tax imposed at Section 3101 of the Internal Revenue Code. (*See* 26 U.S.C. 3101.) (Ex. 093.)

47. The Federal Insurance Contributions Act (FICA) tax on employers contained in Subtitle C at Section 3111 of the Internal Revenue Code is an excise tax on employers with respect to their having employees. (*See* 26 U.S.C. 3111.)

48. At Section 3402 of the Internal Revenue Code, employers are directed to withhold from wages paid to employees, a tax determined in accordance with tables prescribed by the Secretary of the Treasury. (*See* 26 U.S.C. 3402.)

49. Congress does not identify the Section 3402 "tax determined" as either a direct tax, an indirect tax, and/or an "income" tax. (*See* 26 U.S.C. 3402.)

50. Congress made the employer liable for the Section 3402 tax at Section 3403 of the Internal Revenue Code. (*See* 26 U.S.C. Sections 3402 and 3403.)

51. At Section 3501 of the Internal Revenue Code, Congress directed the Secretary of the Treasury to collect the taxes imposed in Subtitle C and pay them into the Treasury of the United States as internal revenue collections. (*See* 26 U.S.C. 3501.)

52. Congress has not anywhere imposed the tax described at Section 3402 of the Internal Revenue Code. (*See* Title 26, United States Code, in its entirety.)

53. At Section 31 of the Internal Revenue Code, the amount of the Section 3402 tax on wages is allowed as a credit against the income tax imposed in Subtitle A. (*See* 26 U.S.C. Sections 1 and 31.)

54. If one does not have any tax imposed at Subtitle A for any reason whatsoever, the law enacted by Congress at Section 3402(n) of the Internal Revenue Code constitutes an exemption of the tax described at Section 3402(a) of the Internal Revenue Code. (*See* 26 U.S.C. Sections 3402.)

55. A typical American family works until noon of every working day just to pay its alleged tax obligations. (*See* "Compilation of Tax Facts" by freelance writer John NacIntyre, published in Southwest Airlines Spirit Magazine, 1999 ed., v. 4, hereinafter "Tax Facts," p. 154.)

56. The typical American family pays more in taxes than they spend on food, clothing, and housing combined. (*See* Tax Facts.)

71. The Federal Reserve Act allowed the U.S. government to borrow large sums of money from private banking institutions at interest, and thereby potentially create a large public debt.

72. U.S. Congress' inability to balance the federal budget or lack of fiscal discipline could create large volumes of public debt to the Federal Reserve.

73. The result of increasing public debt must be an increase in income tax revenues to pay off the debt in order to maintain solvency of the federal government.

74. An increase in income tax revenues would require a larger percentage of the wage (labor) income of average Americans to be extracted as income tax, because more than half of federal income tax revenues derive from personal income taxes rather than corporate income taxes.

75. There is an incentive for politicians to buy votes with borrowed money that will be paid off by unborn children at interest.

76. Requiring unborn children of tomorrow paying off extravagances of today at interest amounts to taxation without representation, which was the very reason our country rebelled from Great Britain to become an independent nation.

77. Thomas Jefferson, one of our founding fathers and author of our Declaration of Independence, said the following

> "I sincerely believe... that banking establishments are more dangerous than standing armies, and that the principle of spending money to be paid by posterity under the name of funding is but swindling futurity on a large scale." --Thomas Jefferson to John Taylor, 1816. ME 15:23

> "Funding I consider as limited, rightfully, to a redemption of the debt within the lives of a majority of the generation contracting it; every generation coming equally, by the laws of the Creator of the world, to the free possession of the earth He made for their subsistence, unencumbered by their predecessors, who, like them, were but tenants for life." --Thomas Jefferson to John Taylor, 1816. ME 15:18

> "[The natural right to be free of the debts of a previous generation is] a salutary curb on the spirit of war and indebtment, which, since the modern theory of the perpetuation of debt, has drenched the earth with blood, and crushed its inhabitants under burdens ever accumulating." --Thomas Jefferson to John Wayles Eppes, 1813. ME 13:272

79. "Peonage" is a form of involuntary servitude prohibited by the Thirteenth Amendment to the Constitution of the United States. [*See Clyatt v. United States*, 197 U.S. 201 (1905)]

80. The U.S. Congress abolished peonage in 1867. (*See* 42 U.S.C. 1994; R.S. Section 1990, Act of Mar. 2, 1867, c. 187, Section 1, 14 Stat. 546.)

81. Holding or returning any person to a condition of peonage is a crime under 18 U.S.C. 1581. (*See* 18 U.S.C. 1581)

82. Involuntary servitude means a condition of servitude in which the victim is forced to work for another by use or threat of physical restraint or injury, or by the use or threat of coercion through law or legal process. [*See Clyatt v. United States*, 197 U.S. 201 (1905); *Bailey v. Alabama*, 219 U.S. 219 (1910); *United States v. Kozminski*, 487 U.S. 931 (1988)]

83. If an American stops turning over the fruits of his or her labor to the federal government in the form of income tax payments, he suffers under the risk of possible criminal prosecution and incarceration. (*See* Form 1040 Instruction Booklet)

## THIRD BELIEF:
## CONGRESS LACKS THE AUTHORITY TO LEGISLATE AN INCOME TAX ON THE PEOPLE EXCEPT IN THE DISTRICT OF COLUMBIA, THE US TERRITORIES AND IN THOSE AREAS WITHIN ANY OF THE 50 STATES WHERE THE STATES HAVE SPECIFICALLY AUTHORIZED IT, IN WRITING.

1. At Section 7608(a) of the Internal Revenue Code, Congress set forth the authority of internal revenue officers with respect to enforcement of Subtitle E and other laws pertaining to liquor, tobacco, and firearms. [(*See* 26 U.S.C. 7608(a)]

2. At Section 7608(b) of the Internal Revenue Code, Congress set forth the authority of internal revenue officers with respect to enforcement of laws relating to internal revenue other than Subtitle E. [*See* 26 U.S.C. 7608(b)]

3. The only persons authorized to enforce Subtitle A are special agents and investigators. [*See* 26 U.S.C. 7608(b)]

4. The term "person" as that term is used in Internal Revenue Code Section 6001 and 6011 is defined at Section 7701(a)(1). [*See* 26 U.S.C. 6001, 6011, and 7701(a)(1)]

5. Internal Revenue Code Section 7701(a)(1) states: "The term person shall be construed to mean and include an individual, a trust, estate,

its jurisdiction" as used at 26 C.F.R. 1.1-1(c) meant being subject to the laws of the country, and that meant the "legislative jurisdiction" of the United States. (*See* "Judicial Tyranny and Your Income Tax," Jeffrey A. Dickstein, J.D., Custom Prints 1990, Appendix B, pp. 309-357.)

18. In the same case, Patricia A. Schaffner testified under oath the term "subject to its jurisdiction" could have no other meaning than the "legislative jurisdiction" of the United States. (*See* "Judicial Tyranny and Your Income Tax," Jeffrey A. Dickstein, J.D., Custom Prints 1990, Appendix B, pp. 309-357.)

19. When Patricia A. Schaffner was asked to tell the jury what facts made Mr. Hall subject to the "legislative jurisdiction" of the United States, the prosecutor, Assistant United States Attorney Larry Mackey objected, and the court sustained the objection. (*See* "Judicial Tyranny and Your Income Tax," Jeffrey A. Dickstein, J.D., Custom Prints 1990, Appendix B, pp. 309-357.)

20. The Internal Revenue Service is never required by the Federal courts to prove facts to establish whether one is subject to the jurisdiction of the United States. (*See* "Judicial Tyranny and Your Income Tax," Jeffrey A. Dickstein, J.D., Custom Prints 1990, Appendix B, pp. 309-357.)

21. The United States Department of Justice and United States Attorneys, and their assistants, always object when an alleged taxpayer demands the Government prove that they are subject to the jurisdiction of the United States, and the federal courts always sustain those objections, which means that the federal courts routinely prohibit the introduction of potentially exculpatory evidence in tax crime trials.

22. The IRS has been directed to maintain a system of financial records on all federal judges, all IRS Criminal Investigation Division Special Agents, and all U.S. Attorneys, which records cannot be accessed by the subject(s) under the FOIA or Privacy Act. ( *See* Treasury System of Records 46.002 as identified in Treasury/IRS Privacy Act of 1974 Resource Document #6372)

23. Unless specifically provided for in the United States Constitution, the federal government does not have legislative jurisdiction in the states. [*See United States v. Lopez*, 514 US 549 (1995)]

24. 40 U.S.C. §255 identifies the only method by which the federal government may acquire legislative jurisdiction over a geographic area within the outer limits of a state of the Union, which is by state cession *in writing*. (*See* 40 U.S.C. §255.)

25. On December 15, 1954, an interdepartmental committee was commissioned on the recommendation of the Attorney General of the United States, Herbert Brownell, Jr., and approved by President

28. The phrase "subject to their jurisdiction" as used in the Thirteenth Amendment means subject to both the jurisdiction of the several states of the union and the United States. (*See* U.S. Const. Amendment 13.)

29. The "subject to its jurisdiction" component of the definition of citizen set out at 26 C.F.R. 1.1-1(c) has a different meaning than the phrase "subject to their jurisdiction" as used in the Thirteenth Amendment to the Constitution of the United States. (*See* 26 C.F.R. 1.1-1(c); U.S. Const. amend 13.)

30. The term "foreign" is nowhere defined in the Internal Revenue Code.

31. The term "foreign" means anything outside of the legislative jurisdiction of the Congress, which means anything outside of federal property ceded, in most cases, to the federal government by the states as required by 40 U.S.C. §255. (*See* 40 U.S.C. §255.)

32. A Treasury Regulation cannot create affirmative duties not otherwise imposed by Congress in the underlying statute, corresponding Internal Revenue Code section. [*See C.I.R. v. Acker*, 361 U.S. 87, 89 (1959); *U.S. v. Calamaro*, 354 U.S. 351, 358-359 (1957)]

33. Congress defined a "taxpayer" at Section 7701(a)(14) of the Internal Revenue Code, as any person subject to any Internal Revenue tax. [*See* 26 U.S.C. 7701(a)(14)]

34. "Subject to" is defined in Black's Law Dictionary, Sixth Edition, page 1425 as:

> "Liable, subordinate, subservient, inferior, obedient to; governed or affected by; provided that; provided; answerable for." Homan v. Employers Reinsurance Corp., 345 Mo. 650, 136 S.W.2d 289, 302

> (*See* Black's Law Dictionary, Sixth Edition, page 1425)

35. Based on the above definition of "subject to", use of the term "taxpayer" in describing anyone creates a presumption of liability for tax on the part of the person being referred to.

36. The IRS uses the term "taxpayer" to refer to *everyone*, including those not necessarily subject to or liable for Subtitle A income taxes.

37. In *Botta v. Scanlon*, 288 F.2d 504, 508 (1961), a federal court said:

> *"A reasonable construction of the taxing statutes does not include vesting any tax official with absolute power of assessment against individuals not specified in the states as a person liable for the tax without an opportunity for judicial review of this status before the*

day for American liberty if the theory of a government outside the supreme law of the land finds lodgment in our constitutional jurisprudence. No higher duty rests upon this court than to exert its full authority to prevent all violation of the principles of the Constitution."

43. The jurisdiction that Honorable Justice Harlan above was referring to where "legislative absolutism" would or could reign was in areas subject to the legislative jurisdiction of the U.S. government, which includes the District of Columbia, federal enclaves within the states, and U.S. territories and possessions.

44. The Internal Revenue Manual says the following, in Section 4.10.7.2.9.8 (05-14-1999):

### Importance of Court Decisions

Decisions made at various levels of the court system are considered to be interpretations of tax laws and may be used by either examiners or taxpayers to support a position.

Certain court cases lend more weight to a position than others. A case decided by the U.S. Supreme Court becomes the law of the land and takes precedence over decisions of lower courts. The Internal Revenue Service must follow Supreme Court decisions. For examiners, Supreme Court decisions have the same weight as the Code.

**Decisions made by lower courts, such as Tax Court, District Courts, or Claims Court, are binding on the Service only for the particular taxpayer and the years litigated.** Adverse decisions of lower courts do not require the Service to alter its position for other taxpayers.

45. The Internal Revenue Service, in its responsive letters to tax payers, routinely and chronically violates the above requirements by citing cases below the Supreme Court level, which do not apply to more than the individual taxpayer in question according to the above.

## FOURTH BELIEF:

9. "Follow that Lead!" states the following;

> "In even the most straightforward fraud case, the usefulness of tax returns should be apparent . . . the tax return information provides a statement under penalty of perjury which may either serve as circumstantial evidence of the target' misrepresentation of his economic status or as helpful cross-examination material . . . Disclosure of tax returns may also provide critical leads and impeachment material."

10. The Disclosure, Privacy Act, and Paperwork Reduction Act Notice set out in the IRS Form 1040 Instruction Booklet states the following:

> "[W]e may disclose your tax information to the Department of Justice, to enforce the tax laws, both civil and criminal, and to cities, states, the District of Columbia, U.S. Commonwealths or possessions, and certain foreign governments to carry out their tax laws."

11. Tax returns are used by the IRS to develop civil and criminal cases against the filers of the tax returns. (*See* "Follow that Lead!")

12. Tax returns of a filer are used as evidence against the filer in both civil and criminal income tax cases. (*See* Annotations, Title 26, Sections 7201,7203)

13. The United States Supreme Court has held that a fifth amendment privilege exists against requiring a person to admit or deny he has documents which the government believes is related to the federal income tax. [*See United States v. Doe*, 465 U.S. 605 (1984)]

14. The Fifth Amendment provides an absolute defense to tax crimes. (*See United States v. Heise*, 709 F.2d 449, 450 (6th Cir. 1983); *Garner v. United States*, 424 U.S. 648, 662-63 (1976).)

15. The U.S. Court of Appeals for the 10th Circuit took the position in *U.S. v. Conklin*, (1994), WL 504211, that the filing of an income tax return (Form 1040) is not compelled and, therefore, the principle that no one may be forced to waive their 5th Amendment rights in order to comply with a law is not applicable to federal income tax returns. (*See U.S. v. Conklin*, (1994), WL 504211)

16. The Supreme Court has held that if one wants to assert the Fifth Amendment to an issue pertaining to a federal income tax return, one must make that claim on the form itself. (*Sullivan v. United States*, 274 U.S. 259 (1927).)

1. The second plank in the Communist Manifesto calls for a heavy, progressive (graduated) income tax not unlike what we have now with the IRS form 1040, which punishes the rich so that wealth may be redistributed to the poor.

2. The U.S. Constitution requires that all income taxes must be uniform as follows, from in Article 1, Section 8, clause 1 of the U.S. Constitution, which says:

> "The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States;"

3. To be uniform, a tax must apply equally to all persons similarly situated and all property of the same type or class being taxed must be taxed at the same percentage rate, no matter where people live, where the property is, or how much taxable income the person makes. Otherwise, the tax discriminates against the rich.

4. The Supreme Court stated in the case of *Pollack v. Farmer's Loan and Trust Company*, 157 U.S. 429, 158 U.S. 601 (1895) that:

> "Congress has the exclusive power of selecting the class. It has regulated that particular branch of commerce which concerns the bringing of alien passengers,' and that taxes shall be levied upon such property as shall be prescribed by law. ***The object of this provision was to prevent unjust discriminations. It prevents property from being classified, and taxed as classed, by different rules.*** All kinds of property must be taxed uniformly or be entirely exempt. The uniformity must be coextensive with the territory to which the tax applies.
>
> Mr. Justice Miller, in his lectures on the constitution, 1889-1890 ( pages 240, 241), said of taxes levied by congress: '***The tax must be uniform on the particular article; and it is uniform, within the meaning of the constitutional requirement, if it is made to bear the same percentage over all the United States.*** That is manifestly the meaning of this word, as used in this clause. The framers of the constitution could not have meant to say that the government, in raising its revenues, should not be allowed to discriminate between the articles which it should tax.' In discussing generally the requirement of uniformity found in state

> "A tax, in the general understanding of the term and as used in the constitution, signifies an exaction for the support of the government. The word has never thought to connote the expropriation of money from one group for the benefit of another." **U.S. v. Butler**, <u>297 U.S. 1</u> (1936)

9. All entitlement programs, including Welfare, Social Security, FICA, etc, fall into the class of taxes identified in **U.S. v. Butler** that are "expropriations of money from one group for the benefit of another."

10. Using income taxes to redistribute income or property between social classes or persons within society makes the U.S. into a socialist country:

> **"socialism 1.** : any of various economic political theories advocating collective or governmental ownership and administration of the means of production and distribution of goods. **2. a**: a system of society or group living in which there is no private property **b**: a system or condition of society in which the means of production are owned and controlled [partially or wholly] by the state **3**: **a stage of society in Marxist theory transitional between capitalism and communism** and distinguished by unequal distribution of goods and pay according to work done."
>
> [Webster's Ninth New Collegiate Dictionary, 1983, Merriam-Webster, p. 1118]

11. The Supreme Court, in *Pollock v. Farmers Loan and Trust*, <u>157 U.S. 429</u> (1895), stated about the very first income tax instituted by Congress that:

> "The present <u>assault upon capital</u> is but the beginning. <u>It will be but the stepping stone to others larger and more sweeping,</u> until our political contest will become war of the poor against the rich; a war of growing intensity and bitterness.
>
> …
>
> The legislation, in the discrimination it makes, is class legislation. <u>Whenever a distinction is made in the burdens a law imposes or in the benefits it confers on any citizens by reason of their birth, or wealth, or religion, it is class legislation, and leads inevitably to oppression and abuses, and to general unrest and disturbance in society</u>."

23

25. Using the government to plunder the assets of the rich to support the poor using the force of the law is no less extortion or theft because it is called "taxation".

### SIXTH BELIEF:
## THE 16TH AMEND. DID NOT COME CLOSE TO BEING RATIFIED BY 3/4THS OF THE STATE LEGISLATURES AS REQUIRED BY ARTICLE 5; THE INCOME TAX IS, THEREFORE, VIOLATIVE OF ART. I, SEC. 9, CL 4

1. The IRS says it is the 16th Amendment that gives it the authority to impose the income tax directly on the working people of America.(*See* IRS Publication No. 1918 (July, 96), Cat. No. 22524B ;"The sixteenth amendment to the Constitution states that citizens are required to file tax returns and pay taxes.")

2. The New York Times says the 16th Amendment is the government's authority to impose the income tax directly on the working people of America. (*See* The New York Times Almanac, 2001, The World's Most Comprehensive and Authoritative Almanac, page 161: "Congress's right to levy taxes on the income of individuals and corporations was contested throughout the 19th century, but that authority was written into the Constitution with the passage of the 16th Amendment in 1913.")

3. The federal courts have said the 16th Amendment is the government's authority to impose the income tax directly on the working people of America. (*See* United States of America vs. Jerome David Pederson, (1985) Case No. CR-84-57-GF: Judge Paul G. Hatfield (United States District Court For The District of Montana) wrote: "The income tax laws of the United States of America are constitutional, having been validly enacted under authority of the Sixteenth Amendment to the United States Constitution.") (*See* United States v. Lawson, 670 F.2d 923, 927 (10th Cir. 1982): the court declared: "The Sixteenth Amendment removed any need to apportion income taxes among the states that otherwise would have been required by Article I, Section 9, clause 4.")

4. Findings, published in "The Law That Never Was," make a compelling case that the 16th Amendment (the "income tax amendment") was not legally ratified and that Secretary of State Philander Knox was not merely in error, but committed fraud when he declared it ratified in February 1913. (See "The Law That Never Was," by Bill Benson and Red Beckman.)

is a fair implication that it must be sufficiently contemporaneous in that number of states to reflect the will of the people in all sections at relatively the same period, which of course ratification scattered through a long series of years would not do. These considerations and the general purport and spirit of the article lead to the conclusion expressed by Judge Jameson 'that an alteration of the Constitution proposed to-day has relation to the sentiment and the felt needs of to-day, and that, if not ratified early while that sentiment may fairly be supposed to exist, it ought to be regarded as waived, and not again to be voted upon, unless a second time proposed by Congress.' That this is the better conclusion becomes even more manifest when what is comprehended in the other view is considered; for, according to it, four amendments proposed long ago-two in 1789, one in 1810 and one in 1861-are still pending and in a situation where their ratification in some of the states many years since by representatives of generations now largely forgotten may be effectively supplemented in enough more states to make three-fourths by representatives of the present or some future generation. To that view few would be able to subscribe, and in our opinion it is quite untenable. We conclude that the fair inference or implication from article 5 is that the ratification must be within some reasonable time after the proposal.

12. The date of September 25, 1789, when the 27th Amendment was first proposed, is "widely separated in time" from the date of March 6, 1978, when Wyoming ratified this amendment. (*See* Annotations, 27th Amendment.)

13. Pursuant to the United States Constitution, Congress is authorized to impose two different types of taxes: direct taxes and indirect taxes. (*See* U.S. Const. Art. 1, Section 2, clause 3; U.S. Const. Art. 1, Section 8, clause 1; U.S. Const. Art. 1, Section 9, clause 4.)

14. The constitutionality of the 1894 income tax act was in question in the case of *Pollock v. Farmers' Loan & Trust Co.*, 157 U.S. 429, aff. reh., 158 U.S. 601 (1895), and that in this case, the Supreme Court found that Congress could tax real and personal property only by means of an apportioned, direct tax. Finding that the income from real and personal property was part of the property itself, the Court concluded in this case that a federal income tax could tax such income only by means of an apportioned tax. Further finding that as this particular tax was not

Resolved by the Senate and House of Representatives of the United States of America in Congress assembled (two-thirds of each House concurring therein), That the following article is proposed as an amendment to the Constitution of the United States, which, when ratified by the legislatures of three-fourths of the several states, shall be valid to all intents and purposes as a part of the Constitution: "Article XVI. The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration."

J.C. CANNON,

Speaker of the House of

Representatives.

J.S. SHERMAN,

Vice-President of the United States,

and President of the Senate.

(*See* SJ 40, 36 Stat. 184.)

20. On July 27, 1909, the same Congress adopted Senate Concurrent Resolution 6, which read as follows:

CONCURRENT RESOLUTION

Resolved by the Senate (the House of Representatives concurring), That the President of the United States be requested to transmit forthwith to the executives of the several States of the United States copies of the article of amendment proposed by Congress to the State legislatures to amend the Constitution of the United States, passed July twelfth, nineteen hundred and nine, respecting the power of Congress to lay and collect taxes on incomes, to the end that the said States may proceed to act upon the said article of amendment; and that he request the executive of each State that may ratify said amendment to transmit to the Secretary of State a certified copy of such ratification.

23. Philander Knox declared the 16th amendment ratified on February 25, 1913, naming the following 38 states as having approved it: Alabama, Kentucky, South Carolina, Illinois, Mississippi, Oklahoma, Maryland, Georgia, Texas, Ohio, Idaho, Oregon, Washington, California, Montana, Indiana, Nevada, North Carolina, Nebraska, Kansas, Colorado, North Dakota, Michigan, Iowa, Missouri, Maine, Tennessee, Arkansas, Wisconsin, New York, South Dakota, Arizona, Minnesota, Louisiana, Delaware, Wyoming, New Jersey and New Mexico. (*See* Knox's Proclamation)

24. When California provided uncertified copies of its resolution to Secretary of State Philander Knox, Knox wrote the following to California Secretary of State Frank Jordan: "I have the honor to acknowledge the receipt of your letter of the 27th ultimo, transmitting a copy of the Joint Resolution of the California Legislature ratifying the proposed Amendment to the Constitution of the United States, and in reply thereto I have to request that you furnish a certified copy of the Resolution under the seal of the State, which is necessary in order to carry out the provisions of Section 205 of the Revised Statutes of the United States".(*See* Letter from Knox to Jordan.)

25. When Wyoming Governor Joseph Carey telegraphed Philander Knox news that the Wyoming legislature had ratified the 16th Amendment on February 3, 1913, Philander Knox telegraphed in return as follows: "Replying to your telegram of 3rd you are requested to furnish a certified copy of Wyoming's ratification of Income Tax Amendment so there may be no question as to the compliance with Section 205 of Revised Statutes."(*See* Letter from Knox to Carey)

26. On February 15, 1913, a State department attorney, J. Rueben Clarke, informed Secretary of State Philander Knox, in reference to the State of Minnesota, "the secretary of the Governor merely informed the Department that the state legislature had ratified the proposed amendment." (*See* Rueben Clarke Memo)

27. In the official records deposited in the Archives of the United States, there is no certified copy of the resolution of the Minnesota legislature ratifying the 16th Amendment. (*See* National Book of state ratification documents: Minnesota)

28. In the documents possessed by the Archives of the United States, there are no certified copies of the resolutions ratifying the 16th Amendment by California and Kentucky. (*See* National Book of state ratification documents: California and Kentucky)

29. The Kentucky Senate voted 22 to 9 against ratification of the 16th Amendment. (*See* Kentucky Senate Journal)

34. No State may change the wording of an amendment proposed by Congress. (*See* "How Our Laws Are Made") (See Letter from Senator Hollings )

35. On February 15, 1913, J. Reuben Clarke, an attorney employed by the Department of State, drafted a memorandum to Secretary Knox wherein the following statements were made: "The resolutions passed by twenty-two states contain errors only of capitalization or punctuation, while those of eleven states contain errors in the wording" (page 7). "Furthermore, under the provisions of the Constitution a legislature is not authorized to alter in any way the amendment proposed by Congress, the function of the legislature consisting merely in the right to approve or disapprove the proposed amendment." (*See* Rueben Clarke Memo.)

36. The Sixteenth Amendment reads as follows:

> "Article XVI. The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration." (*See* U.S. Const. amend XVI.)

37. The Sixteenth Amendment does not read as follows:

> "Article 16: The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several states, and from any census or enumeration." (*See* Oklahoma's Resolution)

38. The Sixteenth Amendment does not read as follows:

> "Article XVI. Congress shall have power to lay and collect taxes on incomes from whatever source derived without apportionment among the several states, and without regard to census enumeration." (*See* California's Resolution)

39. The Sixteenth Amendment does not read as follows:

> "Article XVI. The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several states, and without regard to any census or renumeration." (*See* Illinois' Resolution)

40. The Sixteenth Amendment does not read as follows:

46. The following states were included on Knox's list of 38 states: Arizona, Arkansas, California, Colorado, Georgia, Idaho, Illinois, Kansas, Kentucky, Louisiana, Maryland, Michigan, Mississippi, Missouri, Montana, New Jersey, New Mexico, North Dakota, Tennessee, Texas, Washington, and Wyoming. (*See* Knox's Proclamation)

47. The proposed 16th (income tax) Amendment was never properly and legally approved by the Georgia State Senate. (*See* The Law That Never Was, Volume I, pages 81-88)

48. The actions taken by the state legislatures of Arizona, Arkansas, California, Colorado, Georgia, Idaho, Illinois, Kansas, Kentucky, Louisiana, Maryland, Michigan, Mississippi, Missouri, Montana, New Jersey, New Mexico, North Dakota, Tennessee, Texas, Washington, and Wyoming, in acting on the proposed 16th Amendment, were violative of certain provisions of their state constitutions, which were in effect AND CONTROLLING at the time those states purportedly ratified the 16th Amendment. (*See* The Law That Never Was, Volume I)

49. The state of Tennessee violated Article II, Section 32 of the Tennessee Constitution by denying the people an opportunity to vote for their state legislators between the time the proposed 16th (income tax) Amendment to the U.S. Constitution was submitted to the Tennessee legislature and the time the legislature voted to approve the amendment. (*See* The Law That Never Was, Volume I, pages 213-217)

50. The state legislature of Tennessee violated Article II, Section 18 of the Tennessee Constitution by failing to read (and pass), on three different days, the bill containing the proposed 16th (income tax) Amendment to the U.S. Constitution. (*See* The Law That Never Was, Volume I, pages 213-217)

51. In voting to approve the income tax Amendment the Tennessee state legislature violated Article II, Sections 28 and 29 of the Tennessee Constitution, which prohibited the legislature from voting to impose an income tax on the people of Tennessee. (*See* The Law That Never Was, Volume I, pages 213-217)

52. In voting to approve the income tax Amendment the Arizona state legislature violated Article IX, Section 9 of the State Constitution, which prohibited the legislature from voting to pass any bill, which imposed a tax on the people of Arizona unless the amount of the tax was fixed in the bill. (*See* The Law That Never Was, Volume I, pages 243-250)

53. The state Senate of Arizona violated Article IV, Part 2, Section 12 of the State Constitution by failing to read, on three different days, the bill containing the proposed 16th (income tax) Amendment to the U.S. Constitution. (*See* The Law That Never Was, Volume I, pages 243-250)

containing the proposed 16th (income tax) Amendment to the U.S. Constitution. (*See* The Law That Never Was, Volume I, pages 101-105)

63. In voting to approve the 16th (income tax) Amendment the Illinois state Senate violated Article IV, Section 13 of the State Constitution, by failing to print the bill containing the proposed 16th (income tax) Amendment before the final vote was taken and by failing to read the bill on three different days. (*See* The Law That Never Was, Volume I, pages 51-53) (Ex. 048p )

64. In voting to approve the income tax Amendment the Kansas state legislature violated Article 11, Section 205 of the State Constitution, which prohibited the legislature from voting to pass any bill, which imposed a tax on the people of Kansas, unless the bill specified the specific purpose to which the tax to be imposed under that bill would be applied. (*See* The Law That Never Was, Volume I, pages 161-166)

65. In voting to approve the income tax Amendment the Kansas state Senate violated Article 2, Section 128 of the State Constitution, by failing to record the vote on the bill containing the proposed 16th (income tax) Amendment to the U.S. Constitution. (*See* The Law That Never Was, Volume I, pages 161-166)

66. In voting to approve the income tax Amendment the Kansas state House of Representatives violated Article 2, Section 133 of the State Constitution, by failing to read, section by section, the bill containing the proposed 16th (income tax) Amendment to the U.S. Constitution. (*See* The Law That Never Was, Volume I, pages 161-166)

67. In voting to approve the income tax Amendment the Louisiana state legislature violated Articles 224 and 227of the Louisiana Constitution, which prohibited the legislature from voting to impose a federal income tax on the people of Louisiana (*See* The Law That Never Was, Volume I, pages 257-260)

68. In voting to approve the income tax Amendment the Michigan state legislature violated Article X, Section 6 of the State Constitution, which prohibited the legislature from voting to pass any bill, which imposed a tax on the people of Michigan unless the bill specified the specific purpose to which the tax to be imposed under that bill would be applied. (*See* The Law That Never Was, Volume I, pages 179-183)

69. In voting to approve the 16th (income tax) Amendment the Mississippi state House of Representatives violated Article IV, Section 59 of the State Constitution, by failing to read, three times on three different days, the bill containing the proposed 16th (income tax) Amendment to the U.S. Constitution. (*See* The Law That Never Was, Volume I, pages 55-60)

78. In voting to approve the 16th (income tax) Amendment the North Dakota state legislature (both the Senate and the House), violated the Article II, Section 63 of the State Constitution, which required three readings of the bill, at length, on three separate days, (*See* The Law That Never Was, Volume I, pages 173-178)

79. In voting to approve the 16th (income tax) Amendment the Texas House of Representatives violated Article III, Section 37 of the State Constitution by voting on the bill before the bill was reported out of a Committee. (*See* The Law That Never Was, Volume I, pages 89-96)

80. In voting to approve the income tax Amendment the Texas state legislature violated Article III, Section 48 of the Texas Constitution, which prohibited the legislature from voting to impose a federal income tax on the people of Texas (*See* The Law That Never Was, Volume I, pages 89-96)

81. In voting to approve the 16th (income tax) Amendment the presiding officer of the Texas Senate violated Article III, Section 38 of the State Constitution by failing to publicly read, in open session, the bill containing the proposed 16th (income tax) Amendment to the U.S. Constitution, just prior to signing the bill. (*See* The Law That Never Was, Volume I, pages 89-96)

82. In voting to approve the 16th (income tax) Amendment the Texas state legislature violated Article III, Section 33 of the State Constitution, which required the House to act first on all money bills. (*See* The Law That Never Was, Volume I, pages 89-96)

83. In voting to approve the 16th (income tax) Amendment the Washington state legislature violated Article VII, Section 2 of the State Constitution, which prohibited the legislature from imposing a tax upon the people of the state unless the tax was a uniform and equal rate of taxation. (*See* The Law That Never Was, Volume I, pages 113-118)

84. The Washington state legislature violated Articles III, Section 12 of the Washington Constitution, which required the legislature to submit to the governor, the bill "approving" the proposed 16th (income tax) Amendment. (*See* The Law That Never Was, Volume I, pages 113-118)

85. In voting to approve the 16th (income tax) Amendment the Wyoming state legislature violated Article XV, Section 13 of the State Constitution, which prohibited the legislature from voting to pass any bill, which imposed a tax on the people of Wyoming unless the bill specified the specific purpose to which the tax to be imposed under that bill would be applied. (*See* The Law That Never Was, Volume I, pages 265-271)

94. The Union Pacific Railroad was a United States Corporation located in the Utah Territory. [See *Brushaber v. Union Pacific R.R. Co.*, 240 U.S. 1, 18-19 (1915)]

95. The privilege of operating as a corporation can be taxed as an excise. (*See* Flint v. Stone Tracy Co., 226 U.S. 107)

96. In *Eisner v. Macomber*, 252 U.S. 189, 205-206 (1920), the United States Supreme Court held a tax on income was a direct tax, but could be imposed without apportionment because the 16th Amendment gave Congress the power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration. [*See Eisner v. Macomber*, 252 U.S. 189, 205-206 (1920)]

97. The United States Supreme Court stated in *Eisner*:

a. The Sixteenth Amendment must be construed in connection with the taxing clauses of the original Constitution and the effect attributed to them before the Amendment was adopted. In *Pollock v. Farmers' Loan and Trust Co.*, 158 U.S. 601, under the Act of August 27, 1894, c. 349, section 27, 28 Stat. 509, 553, it was held that taxes upon rents and profits of real property were in effect direct taxes upon the property from which such income arose, imposed by reason of ownership; and that Congress could not impose such taxes without apportioning them among the States according to population, as required by Art. 1, section 2, c1.3, and section 9, cl.4, of the original Constitution.

b. Afterwards, and evidently in recognition of the limitation upon the taxing power of Congress thus determined, the Sixteenth Amendment was adopted, in words lucidly expressing the object to be accomplished: "The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration." As repeatedly held, this did not extend the taxing power to new subjects, but merely removed the necessity which otherwise might exist for an apportionment among the States of taxes laid on income. (Citing *Brushaber v. Union Pacific R.R. Co.*, 240 U.S. at 17-19) (other citations omitted).

c. A proper regard for its genesis, as well as its very clear language, requires also that this Amendment shall not be extended by loose construction, so as to repeal or modify, except as applied

104.    The 10th Circuit Court of Appeals, in the Lawson case, ruled that, "The Sixteenth Amendment removed any need to apportion income taxes among the states that otherwise would have been required by Article I, Section 9, clause 4." (*See U.S. v. Lawson* (1982), 670 F2d 923, 927.)

105.    Judges in the Courts of Appeal for the Second Circuit take the position that the income tax is an indirect tax. [*See Ficalora v. C.I.R.*, 751 F.2d 85 (2nd Cir. 1984)]

106.    Judges in the Courts of Appeal for the Fifth Circuit take the position that the income tax is a direct tax. [*See Lonsdale v. C.I.R.*, 661 F.2d 71 (5th Cir. 1984)]

107.    When a law is ambiguous, it is unconstitutional and cannot be enforced under the "void for vagueness doctrine" because it violates due process protections guaranteed by the Fifth and Sixth Amendments as described by the Supreme Court in the following decisions:

   o  Origin of the doctrine (*See Lanzetta v. New Jersey*, 306 U.S. 451)
   o  Development of the doctrine (*See Screws v. United States*, 325 U.S. 91, *Williams v. United States*, 341 U.S. 97, and *Jordan v. De George*, 341 U.S. 223).

108.    The "void for vagueness doctrine" of the Supreme Court was described in *U.S. v. DeCadena* as follows:

> **"The essential purpose** of the "void for vagueness doctrine" with respect to interpretation of a criminal statute, **is to warn individuals of the criminal consequences of their conduct.** ... Criminal statutes which fail to give due notice that an act has been made criminal before it is done are unconstitutional deprivations of due process of law."

> [*See U.S. v. De Cadena*, 105 F.Supp. 202, 204 (1952) (emphasis added)]

109.    In 1894, the United States Constitution recognized two classes of taxes, direct taxes and indirect taxes. [*See Pollock v. Farmers' Loan & Trust Co.*, 157 U.S. 429, aff. reh., 158 U.S. 601 (1895)]

110.    In 1894, the United States Constitution, at Art. 1, Sec. 2, Clause 3 and Art. 1, Sec. 9, Clause 4, required apportionment of all direct taxes. [*See Pollock v. Farmers' Loan & Trust Co.*, 157 U.S. 429, aff. reh., 158 U.S. 601 (1895)]

111.    In 1894, the United States Constitution, at Art. 1, Sec. 8, Clause 1, required all indirect taxes to be uniform. [*See Pollock v. Farmers' Loan & Trust Co.*, 157 U.S. 429, aff. reh., 158 U.S. 601 (1895)]

118.    In 1909, President Taft called a special session of Congress for the purpose of amending the apportionment requirement of income taxes. (*See* Taft's message.)

119.    During the congressional debate on the income tax amendment, it was stated that the income tax would not touch one hair of a working man's head.

## SEVENTH BELIEF:
## THE INTERNAL REVENUE CODE DOES NOT MAKE MOST AMERICANS LIABLE TO FILE A TAX RETURN AND PAY AN INCOME TAX.

1. The Internal Revenue Code is found at Title 26 of the United States Code.
2. Title 26 of the United States Code is broken down into Subtitles.
3. Income taxes are set forth in Subtitle A of Title 26.
4. Subtitle A contains Sections 1 through 1563.
5. Estate and gift taxes are set forth in Subtitle B of Title 26.
6. Subtitle B contains Sections 2001 through 2704.
7. Employment taxes are set forth in Subtitle C of Title 26.
8. Subtitle C contains Sections 3101 through 3510.
9. Miscellaneous excise taxes are set forth in Subtitle D of Title 26.
10. Subtitle D contains Sections 4001 through 5000.
11. Alcohol, tobacco, and certain other excise taxes are set forth in Subtitle E of Title 26.
12. Subtitle E contains Sections 5001 through 5882.
13. Procedures and administration to be followed with respect to the different taxes addressed in Subtitles A through E are set forth in Subtitle F of Title 26.
14. Subtitle F contains Sections 6001 through 7873.
15. Congress enacted the Privacy Act at 5 U.S.C. 552a(e)(3).
16. When the Internal Revenue Service requests information from an individual, the Privacy Act requires the IRS to inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual –
    a. the authority which authorizes the solicitation of the information and whether disclosure of such information is mandatory or voluntary;

charged tips shall be charge receipts, records necessary to comply with Section 6053(c) and copies of statements furnished by employees under Section 6053(a)." (*See* 26 U.S.C. 6001.)

22. Internal Revenue Code Section 6011 states:

> "(a) General Rule. When required by regulations prescribed by the Secretary any person made liable for any tax imposed by this title, or for the collection thereof, shall make a return or statement according to the forms and regulations prescribed by the Secretary. Every person required to make a return or statement shall include therein the information required by such forms or regulations . . .(g) Income, estate and gift taxes. For requirement that returns of income, estate, and gift taxes be made whether or not there is tax liability, see subparts B and C."

23. Subparts B and C referred to at Internal Revenue Code Section 6011(g) contain Internal Revenue Code Sections 6012 through 6017a. (*See* 26 U.S.C. 6011(g); Title 26, United States Code, index.)

24. Congress displayed its knowledge of how to make someone "liable for" a tax at 26 U.S.C. 5005, which states that: "(a) The distiller or importer of distilled spirits shall be liable for the taxes imposed thereon by section 5001(a)(1)."

25. Congress displayed its knowledge of how to make someone liable for a tax at 26 U.S.C. 5703, which states that: "(a)(1) The manufacturer or importer of tobacco products and cigarette papers and tubes shall be liable for the taxes imposed therein by section 5701."

26. The persons made liable at Internal Revenue Code Sections 5005 and 5703, for the taxes imposed at Internal Revenue Code Sections 5001(a)(1) and 5701, respectively, are the persons described at Sections 6001 and 6011 required to make returns and keep records. (*See* 26 U.S.C. Sections 5005, 5703, 5001(a)(1), 5701, 6001, and 6011.)

27. Section 1461 is the only place in Subtitle A of the Internal Revenue Code where Congress used the words: "liable for.'

28. The person made liable by Congress at Section 1461 is a withholding agent for nonresident aliens.

29. There is a canon of statutory construction, "expressio unius est exclusio alterius", which means the express mention of one thing means the implied exclusion of another. (*See* Black's Law Dictionary, 6th Ed., West Publishing Co. 1990, p. 581.)

30. Congress could have, but did not, make anyone else other than the withholding agent referred to in Section 1461, "liable for" any income

> **The term alien individual means an individual who is not a citizen or a national of the United States. See Sec. 1.1-1(c).**
>
> (ii) Nonresident alien individual.
>
> The term nonresident alien individual means a person described in section 7701(b)(1)(B), an alien individual who is a resident of a foreign country under the residence article of an income tax treaty and Sec. 301.7701(b)-7(a)(1) of this chapter, or an alien individual who is a resident of Puerto Rico, Guam, the Commonwealth of Northern Mariana Islands, the U.S. Virgin Islands, or American Samoa as determined under Sec. 301.7701(b)-1(d) of this chapter. An alien individual who has made an election under section 6013 (g) or (h) to be treated as a resident of the United States is nevertheless treated as a nonresident alien individual for purposes of withholding under chapter 3 of the Code and the regulations there under.

38. There is no other place anywhere in the Internal Revenue Code or 26 CFR where the word "individual" is defined.
39. 26 CFR 1.1441-1 is the definition for the term "individual" that appears at the top of the IRS form 1040 in the phrase "U.S. Individual Income Tax Return". (*See* IRS Form 1040 U.S. Individual Income Tax Return.)
40. IRS form 1040NR is the form required to be used by nonresident aliens. (*See* IRS form 1040NR)
41. If Form 1040NR is used for nonresident aliens, the only thing left that an "individual" appearing in 26 U.S.C. §7701(a)(1) can be is an "alien" based on 26 CFR §1.1441-1.
42. The term "citizen of the United States" is defined as follows in 26 CFR 31.3121(e) State, United States, and citizen:

> (b)... The term 'citizen of the United States' includes a citizen of the 'Commonwealth of Puerto Rico or the Virgin Islands, and, effective January 1, 1961, a citizen of Guam or American Samoa

# EIGHTH BELIEF:
# THE INTERNAL REVENUE CODE IS VOID FOR VAGUENESS

4. If the meaning of the word "includes" as used in the Internal Revenue Code is "and" or "in addition to" as described above, then the code cannot define or confine the precise meaning of the following words that use "include" in their definition:
   - "State" found in <u>26 U.S.C. §7701(a)(10)</u> and <u>4 U.S.C. §110</u>
   - "United States" found in <u>26 U.S.C. §7701(a)(9)</u>
   - "employee" found in <u>26 U.S.C. §3401</u>(c ) and <u>26 CFR §31.3401(c )-1</u>
   - "person" found in <u>26 CFR 301.6671-1</u> (which governs who is liable for penalties under Internal Revenue Code)

5. If the meaning of "includes" as used in the definitions above is "and" or "in addition to", then the code cannot define any of the words described, based on the definition of the word "definition" found in Black's Law Dictionary, Sixth Edition, page 423:

   > **definition**: (Black's Law Dictionary, Sixth Edition, page 423) A description of a thing by its properties; an explanation of the meaning of a word or term. **The process of stating the exact meaning of a word by means of other words**. Such a description of the thing defined, including all essential elements and excluding all nonessential, as to distinguish it from all other things and classes."

6. Absent concrete definitions of the above critical words identified in question 417, the meaning of the words becomes ambiguous, unclear, and subjective.

7. When the interpretation of a statute or regulation is unclear or ambiguous, then the by the rules of statutory construction, the doubt should be resolved in favor of the taxpayer as indicated in the cite from the Supreme Court below:

   > "In view of other settled rules of statutory construction, which teach that a law is presumed, in the absence of clear expression to the contrary, to operate prospectively; that, **if doubt exists as to the construction of a taxing statute, the doubt should be resolved in favor of the taxpayer...**" **Hassett v. Welch.**, 303 US 303, pp. 314 - 315, 82 L Ed 858. (1938) (emphasis added)

8. In the majority of cases, doubts about the interpretation of the tax code are resolved in favor of the taxpayer by any federal court as required by the Supreme Court above.

51

*"Hostile contention by means of armed forces, carried on between nations, states, or rulers, or between citizens in the same nation or state."*

18. Agents of the IRS involved in seizures of property use guns and arms against citizens, making the confrontation an armed confrontation.
19. IRS seizures can and do occur without court orders, warrants, or due process required by the Fourth Amendment and at the point of a gun.
20. Property seizures as described above amount to an act of war of the government against the citizens.
21. Acts of war against citizens, when not based on law, are treasonable offenses punishable by execution.
22. Violation of due process produces *injustice* in society, which is why the founding fathers required us to have a Fifth Amendment.
23. The purpose of the government is to write laws to *prevent*, rather than *promote*, injustice in society, and thereby protect the right to life, liberty, property, and pursuit of happiness of *all citizens equally*.


## NINTH BELIEF:
## UNLESS ONE IS A FOREIGNER WORKING HERE OR A CITIZEN OF THE U.S.A. EARNING HIS MONEY ABROAD HE IS NOT LIABLE FOR THE INCOME TAX"


1. The term "from whatever source derived" as used in the Sixteenth Amendment does *not* mean that the source of income or the situs for taxation is *irrelevant or inconsequential in determining taxable income*.
2. Interpreting the phrase "from whatever source derived" to mean that the source or situs is irrelevant, makes the federal income tax applicable to any country or location in the world and renders 26 U.S.C. §861 and 26 U.S.C. §862 irrelevant and unnecessary, which clearly is an irrational and nonsensical conclusion to reach.
3. The federal income tax applies only to taxable income, which, generally speaking, is "gross income" minus allowable deductions.
4. The federal income tax regulations generally define "gross income" to mean "all income from whatever source derived, unless excluded by law." as follows:

26 CFR § 1.61-1(a):

8. The above older regulation, 26 CFR §39.21-1 (1956) and 26 CFR 39.22(b)-1 (1956) has never been explicitly repealed or superceded by newer regulations and is still in force.

9. The regulations under 26 U.S.C. §863 state:

> 26 CFR § 1.863-1(c)

> **"Determination of taxable income**. The taxpayer's taxable income from sources <u>within or without</u> the United States **will be determined under the rules of Secs. <u>1.861-8</u> through 1.861-14T** for determining taxable income from sources <u>within</u> the United States."

10. 26 USC § 61 lists some of the more common "items" of income which are taxable, such as compensation for services, interest, and dividends, among others. Section 1.861-8(d)(2) of the federal income tax regulations are to be consulted in determining in which situations these "items" of income are excluded for federal income tax purposes.

> 26 CFR § 1.861-8(d)(2)

> (2) Allocation and apportionment to exempt, excluded, or eliminated income. [Reserved] For guidance, <u>see Sec. 1.861-8T(d)(2)</u>.

11. 26 CFR § 1.861-8T(d)(2) of the regulations lists several types of income which are "not considered to be exempt, eliminated, or excluded income," as follows:

> 26 CFR § 1.861-8T(d)(2)(iii)

> (iii.)Income that is not considered tax exempt. The following items are <u>not considered to be exempt, eliminated, or excluded</u> <u>income</u> and, thus, may have expenses, losses, or other deductions allocated and apportioned to them:

> > (A) In the case of a <u>foreign taxpayer</u> (including a foreign sales corporation (FSC)) computing its <u>effectively</u> <u>connected income</u>, gross income (whether domestic or foreign source) which is not effectively connected to the conduct of a United States trade or business;

55

information must bear and display OMB control numbers. (*See* 44 U.S.C. 3501, *et seq.*)

2. 1 C.F.R. 21.35 requires that OMB control numbers shall be placed parenthetically at the end of a regulation or displayed in a table or codified section. (*See* 1 C.F.R. 21.35.)

3. The following tax regulations contain OMB control numbers at the end of these regulations:

   26 C.F.R. 1.860-2 (Exhibit 115)
   26 C.F.R. 1.860-4 (Exhibit 116)
   26 C.F.R. 1.897-1 (Exhibit 117)
   26 C.F.R. 1.901-2 (Exhibit 118)
   26 C.F.R. 1.1445-7 (Exhibit 119)
   26 C.F.R. 1.6046-1 (Exhibit 122)
   26 C.F.R. 1.6151-1 (Exhibit 124)
   26 C.F.R. 1.6152-1 (Exhibit 125)
   26 C.F.R. 1.9200-2 (Exhibit 126)
   26 C.F.R. 31.3401(a)(8)(A)-1 (Exhibit 127)
   26 C.F.R. 31.3501(a)-1T (Exhibit 128)
   26 C.F.R. 301.6324A-1 (Exhibit 129)
   26 C.F.R. 301.7477-1 (Exhibit 130)

4. 26 U.S.C. 6012 does not specify where tax returns are to be filed. (*See* 26 U.S.C. 6012.)

5. 26 U.S.C. 6091 governs the matter of where tax returns are to be filed. (*See* 26 U.S.C. 6091.)

6. By the plain language of Section 6091, regulations must be promulgated to implement this statute. (*See* 26 U.S.C. 6091.)

7. In 5 U.S.C. 551, a "rule" is defined as:

   "(4) 'rule' means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency . . . ."

8. 5 U.S.C. 552 describes in particular detail various items which must be published by federal agencies in the Federal Register, as follows:

   "(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public--

side, lists the OMB control number assigned to the OMB-approved form to be used to collect the information so identified and described.

13. The Table displayed at 26 C.F.R. 602.101 in the 1994 version of the Code of Federal Regulations lists 1.1-1 as a CFR part or section that identifies and describes information to be collected by the Internal Revenue Service. [*See* 26 C.F.R. 602.101 (1994)]

14. 26 C.F.R. 1.1-1 relates to the income tax imposed on individuals by 26 U.S.C. 1.

15. The OMB control number assigned to the form to be used to collect the information identified and described at 26 C.F.R. 1.1-1 is 1545-0067. [*See* 26 C.F.R. 602.101(c)]

16. The OMB control number 1545-0067 is assigned to the IRS Form 2555.

17. The IRS Form 2555 is titled "Foreign Earned Income".

18. The IRS Form 2555 is used to collect information regarding foreign earned income. (*See* IRS Form 2555.)

19. The OMB control number assigned to the IRS Form 1040 Individual Income Tax Return is 1545-0074.

20. The Table set out at 26 C.F.R. 602.101 has never displayed the OMB control number 1545-0074 as being assigned to the collection of individual income tax information identified and described by 26 C.F.R. 1.1-1. (*See* 26 C.F.R. 602.101(c), current and all historical versions.)

21. The OMB has not approved the IRS Form 1040 U.S. Individual Income Tax Return as the proper form on which to make the return of individual income tax information identified and described at 26 C.F.R. 1.1-1. [(*See* 26 C.F.R. 602.101(c)]

22. The Table displayed at 26 C.F.R. 602.101 in the 1995 version of the Code of Federal Regulations does not list 1.1-1 as a CFR part or section that identifies and describes information to be collected by the Internal Revenue Service. (*See* 26 C.F.R. 602.101(c) (1995).)

23. The Internal Revenue Service caused the entry for 1.1-1 to be deleted from 26 C.F.R. 602.101, by publishing the deletion at 59 FR 27235, on May 26, 1994. (*See* 26 C.F.R. 602.101; 59 FR 27235.)

24. The published deletion was accomplished under the supervision of Internal Revenue Service employee Cynthia E. Grigsby, Chief, Regulations Unit, Assistant Chief Counsel (Corporate). (*See* 26 C.F.R. 602.101; 59 FR 27235.)

**ELEVENTH BELIEF:**

10. The Fourth Amendment requires that the person who signs or issues the warrant authorizing seizure must be a neutral magistrate as indicated in the annotated Fourth Amendment:

**Issuance by Neutral Magistrate** .--In numerous cases, the Court has referred to the necessity that warrants be issued by a "judicial officer" or a "magistrate."[1] "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers."[2] These cases do not mean that only a judge or an official who is a lawyer may issue warrants, but they do stand for two tests of the validity of the power of the issuing party to so act. "He must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest or search."[3] The first test cannot be met when the issuing party is himself engaged in law enforcement activities,[4] but the Court has not required that an issuing party have that independence of tenure and guarantee of salary which characterizes federal judges. [5] And in passing on the second test, the Court has been essentially pragmatic in assessing whether the issuing party possesses the capacity to determine probable cause. [6]

(*See* http://caselaw.lp.findlaw.com/data/constitution/amendment04/02.html)

11. The IRS routinely seizes property from citizens without first litigating to obtain a warrant from a neutral magistrate.

12. The Supreme Court said that persons are entitled to a due process hearing prior to the seizing of property as follows:

"The right to a prior hearing has long been recognized by this Court [Supreme Court] under the Fourteenth and Fifth

imposed under 26 U.S.C. §1 or 26 U.S.C. §871 by other than the taxpayer filling out the form.

16. There are no implementing regulations applicable to Part 1 of Title 26 of the Code of Federal Regulations which require record keeping for the tax imposed under 26 U.S.C. §1 or 26 U.S.C. §871 by other than the taxpayer filling out the form.

17. There are no implementing regulations applicable to Part 1 of Title 26 of the Code of Federal Regulations which authorize IRS collection of the tax imposed under 26 U.S.C. §1 or 26 U.S.C. §871.

18. There are no implementing regulations applicable to Part 1 of Title 26 of the Code of Federal Regulations which authorize imposition by the government of penalties or interest for nonpayment of the tax imposed under 26 U.S.C. §1 or 26 U.S.C. §871.

## TWELFTH BELIEF:
### THE IRS ROUTINELY VIOLATES CITIZENS' DUE PROCESS RIGHTS BY WILLFULLY AND INTENTIONALLY MANIPULATING TAXPAYERS' INDIVIDUAL MASTER FILES FOR THE PURPOSE OF CREATING TIME-BARRED ASSESSMENTS, CREATING AND PROVIDING FRAUDULENT CERTIFICATES OF OFFICIAL RECORDS TO THE COURT TO SUPPORT ILLEGAL ASSESSMENTS, MANIPULATING MASTER FILES TO SHORT PAY TAXPAYERS LEGAL INTEREST OWED BY THE GOVERNMENT, COLLECTING SOCIAL SECURITY FROM TAXPAYERS VIA LEVY IN DIRECT VIOLATION OF THE LAW, WILLFULLY AND INTENTIONALLY CREATING FRAUDULENT PENALTY AND INTEREST AGAINST TAXPAYERS

1. The IRS is placing levies on taxpayers federal social security benefits in direct violation of the law. (*See* 42 U.S.C. Section 407)

2. The IRS is exceeding the 15% lawful restriction on collection of continuing levies. (*See* 26 U.S.C. Section 6331.)

3. The IRS is making illegal time barred assessments and concealing those assessments by placing fraudulent information on taxpayer master files. (*See* Statutory requirements for a valid assessment)

4. The IRS is submitting fraudulent CERTIFICATES OF OFFICIAL RECORDS to the courts to substantiate lawful assessments. (*See* Certificate of official record data)

5. <u>IRS Publication 1, IRS Publication 5 and IRS Publication 556</u>, are all given to the taxpayer during the audit through appeals procedure and that these publications state that these administrative, procedural (due process) steps are available to the TAXPAYER.

6. Tax Court is an extremely expensive remedy for the individual TAXPAYER.

7. The IRS is the only party that benefits as taxpayers are forced into Tax Court.

8. The Tax Court, in <u>*Minahan v Commissioner 88 T.C. 492*</u>, found that the taxpayer's right to attorney's fees on favorable outcome is jeopardized if the administrative procedures are not exhausted.

9. The *Reform and Restructuring Act of 1998* requires the TAXPAYER to go through these administrative, procedural (due process) steps in order to prove his "cooperativeness" with IRS, and to shift the burden of proof to the IRS during the administrative hearing and at trial. (*See* Reform and Restructuring Act of 1998, Section 3001) (*See* 26 USC Section 7491)

10. The IRS routinely ignores the Peoples' demands for their procedural, due process, statutory rights, ignoring IRS Publications 1, 5, and 556, the regulations they are supposed to use in making their determination and the underlying statutes.

11. There is no penalty for the IRS agents if they violate the income tax statutes by denying the People their due process rights, but the statutes contain a multitude of penalties for the People if they violate the income tax statutes, and those penalties are almost always imposed. (*See* Index of IRS Tax Code, Penalties)

12. The IRS will often deny a person his administrative, statutory, due process rights because the statute of limitation (26 I.R.C. 6501 *et. seq.*) is running out for them to get the statutory Notice of Deficiency (26 I.R.C. 6212) out and they are in fear of losing the whole year of taxation from that person.

13. The IRS races to issue a statutory Notice of Deficiency under 26 I. R. C. 6212, rather than give the People their due process rights to administrative level resolution under 26 C.F.R. 601.605, 601.606, because the IRS has greater resources and power in TAX COURT.

14. A Notice of Deficiency is, in most cases, completely erroneous, and always greatly in favor of the IRS.

15. Many people default on their Notice of Deficiency because they don't have the money to get to Tax Court.

16. IRS often uses erroneous figures for Income when they send out a Notice of Deficiency.

29. Without an assessment there can be no liability.
30. The IRS disclosure officers are making the assessments.
31. There is no law in which a disclosure officer is authorized to make an assessment.
32. An assessment made by a disclosure officer is invalid as a matter of law.
33. There are over 100 regulations that apply to Form 1040 cross referenced by OMB #1545-0074, and that the IRS refuses to identify which ones they use in making determinations that a citizen is liable to file a Form 1040 and is liable to pay the tax.
34. A lien arises at the time an assessment is made. (*See* 26 USC 6322)
35. The evidence underlying the entries on the Certificate of Assessments and Payments is relevant to the issue of whether an assessment was made. (*See Beall v US, Civil Action 89 C 6500 (N.D. Ill. Eastern Div.),* which relies upon *Psaty v US, 442 F2d. 1154 (3rd. Cir. 1971),* and *US v Hart, 89-1 USTC para. 9255 (C D Ill, 1989).*
36. Without an assessment there is no liability. (*See US v Nipper No. 00-5057 (D.C. No. 98-CV-526-K)(N.D. Okla.) (10th. Cir. 2001)*

Note: On appeal the government did not provide underlying evidence in support of its tax assessments and the case was remanded back to the district court for the government to prove its tax assessments.

37. The TAXPAYER is helpless as he tries to exercise his statutory (due process) rights to these lower level administrative remedies to resolve his audit difference without going to tax court.
38. The tax imposed upon individuals required to make a return under Section 6012(a) of the Internal Revenue Code is imposed upon the individual's "taxable income."
39. The Section 6020(b) requirement for the Secretary to make the required Section 6012(a) return is to require the Secretary to compute the taxpayers taxable income so the correct amount of tax owed can be calculated.
40. When an individual required to make a return under Section 6012(a) of the Internal Revenue Code fails to make the required return, and the Internal Revenue Service issues a notice of deficiency, the amount of tax claimed as due by the Secretary is not based upon the taxable income, but is computed without regard to the requirements of Sections 62 and 63 of the Internal Revenue Code from which adjusted gross income and taxable income are computed from gross income.
41. The IRS attempts to obtain assessments of more tax than would otherwise be required by law as an unauthorized additional penalty on

50. The IRS computer system, the IDRS (Integrated Data Retrieval Systems) was programmed to require a tax return to be filed in order to create a tax module for each taxable year.

51. If an individual required to make and file a return under Section 6012(a) fails to file such a return, that the Secretary creates a "dummy return" showing zero tax due and owing. (*See Blair v. C.I.R.*, 57 T.C.M. (CCH) 1396 (1989); *Phillips v. C.I.R.*, 851 F.2d 1492 (D.C. Cir. 1988); *Schiff v. United States*, 71A A.F.T.R.2d 9303271 (1989).

52. This "dummy return" sets forth no financial data from which the gross income, adjusted gross income or taxable income can be computed. (*See Blair v. C.I.R.*, 57 T.C.M. (CCH) 1396 (1989); *Phillips v. C.I.R.*, 851 F.2d 1492 (D.C. Cir. 1988); *Schiff v. United States*, 71A A.F.T.R.2d 9303271 (1989).

53. This "dummy return" is not signed. (*See Blair v. C.I.R.*, 57 T.C.M. (CCH) 1396 (1989); *Phillips v. C.I.R.*, 851 F.2d 1492 (D.C. Cir. 1988); *Schiff v. United States*, 71A A.F.T.R.2d 9303271 (1989).

54. A "dummy return" is physically created on the IRS Form 1040. (*See Blair v. C.I.R.*, 57 T.C.M. (CCH) 1396 (1989); *Phillips v. C.I.R.*, 851 F.2d 1492 (D.C. Cir. 1988); *Schiff v. United States*, 71A A.F.T.R.2d 9303271 (1989).

55. Congress has not authorized the Internal Revenue Code or Treasury Regulations that authorizes the creation of "dummy returns". (*See* Title 26, United States Code, in its entirety.)

56. If an individual required to make a return under Section 6012(a) files a return that does not contain the financial information necessary to allow the IRS to compute gross income, adjusted gross income and/or taxable income, the IRS calls such a return a "zero return." (*See Hopkins v. United States*, 56 A.F.T.R.2d 85-5940 (1985); *Nichols v. United States*, 575 F. Supp. 320 (D.C. Minn 1983); *Tornichio v. United States*, 81 A.F.T.R.2d 98-1377 (1988).

57. If an individual required to make a return under Section 6012(a) files a return that does not contain the financial information necessary to allow the IRS to compute gross income, adjusted gross income and/or taxable income, the IRS takes the position that no return has been filed. (*See Hopkins v. United States*, 56 A.F.T.R.2d 85-5940 (1985); *Nichols v. United States*, 575 F. Supp. 320 (D.C. Minn 1983); *Tornichio v. United States*, 81 A.F.T.R.2d 98-1377 (1988).

58. If an individual required to make a return under Section 6012(a) files a return that does not contain the financial information necessary to allow the IRS to compute gross income, adjusted gross income and/or taxable income, the IRS takes the position that the return is "frivolous" and

7. Lesson 23, Figure 23-2, page 23-3, contains a reprint of Delegation Order 182. The Order lists revenue agents and revenue officers as having delegated authority to execute returns under the authority of 6020(b).

8. The Internal Revenue Manual restricts the broad delegation of Delegation Order No.182 to employment, excise, and partnership taxes.

9. The Secretary has recognized that the delegation authority of D.O. No. 182 is restricted to employment, excise, and partnership taxes because of constitutional issues.

10. The Internal Revenue Manual lists the following tax returns **Form 940**, Employer's Annual Federal Unemployment Tax Return; **Form 941**, Employer's Quarterly Federal Tax Return; **Form 942**, Employer's Quarterly Tax Return for Household Employees; **Form 943**, Employer's Annual Tax Return for Agricultural Employees; **Form 720**, Quarterly Federal Excise Tax Return; **Form 2290**, Federal Use Tax Return on Highway Motor Vehicles; **Form CT-1**, Employer's Annual Railroad Retirement Tax Return; **Form 1065**, U.S. Partnership Return of Income - as being appropriate for action under 6020(b). ( page 23-3 and 23-4; IRM 5.18.2.3)

11. Form 1040, U.S. Individual Income Tax Return is NOT included in IRM 5.18.2.3 as a return appropriate for action under 6020(b).

12. When recommending assessments under 6020(b) the revenue officer will prepare all the necessary returns.

13. The balance of Lesson 23 IRC SECTION 6020(b) for Revenue Officer Phase One training explains the 6020(b) procedures for computing the tax for Employment, Excise, and Partnership returns.

14. Lesson 23 IRC SECTION 6020(b) does not contain any references to preparing income tax returns under 6020(b).

15. Lesson 23 IRC SECTION 6020(B) makes the statement to the revenue officer trainee, "You have already studied audit referrals as a means to enforce compliance on income tax returns."

16. The trainee is told that by the end of the lesson he will be able to identify situations when action under IRC section 6020(b) is appropriate.

17. If the revenue officer is expected to identify situations when action under IRC 6020(b) is appropriate, logic then, would hold that this necessarily implies that the revenue officer would also be expected to identify situations when action under IRC 6020(b) would not be appropriate. Lesson 23 IRC SECTION 6020(b) made it clear that it is not appropriate to use 6020(b) for income tax, Form 1040 non-filers.

18. There are no training instructions within Lesson 23 that pertain to using 6020(b) to prepare and assess Form 1040, U.S. Individual Income Tax Return.

# FIFTEENTH BELIEF:
## THE COURTS ARE BIASED AGAINST THOSE THAT QUESTION THE VALIDITY OF THE FEDERAL TAX LAWS

1. 26 U.S.C. 7203 purportedly imposes a penalty for the crime of willful failure to file a tax return.
2. Congress enacted 26 U.S.C. 7203 in August, 1954. (*See* 26 U.S.C. 7203, credits and historical notes.)
3. The United States Supreme Court in *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329 (1998) stated: "[w]e assume that Congress is aware of existing law when it passes legislation."
4. Congress enacted 44 U.S.C. 3512 in 1980. (*See* 44 U.S.C. 3512, credits and historical notes.)
5. 44 U.S.C. 3512 states that:

> (a) Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information that is subject to this subchapter if--
>
> (1) the collection of information does not display a valid control number assigned by the Director in accordance with this subchapter; or
>
> (2) the agency fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number.
>
> (b) The protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or judicial action applicable thereto.

6. United States Supreme Court Chief Judge Taney in 1863 protested the constitutionality of the income tax as applied to him. [*See Evans v. Gore*, 253 U.S. 245, 257 (1920)]
7. United States District Court Judge Walter Evans, in 1919 protested the constitutionality of the income tax as applied to him. [*See Evans v. Gore*, 253 U.S. 245 (1920)]

8. United States Circuit Court Judge Joseph W. Woodrough in 1936 protested the constitutionality of the income tax as applied to him. [*See O'Malley v. Woodrough*, 307 U.S. 277 (1939)]

9. United States District Court Judge Terry J. Hatter and other federal court judges in the 1980s protested the constitutionality of taxes as applied to them. [*See United States v. Hatter*, 121 S. Ct. 1782 (2001)]

10. Even in criminal cases where a loss of freedom can be the result, American citizens who are not judges are precluded by the federal judiciary, and with the express approval and consent of the Department of Justice and U.S. Attorney, from arguing the constitutionality of the income tax as applied to them. (*See U.S. v Farber, 630 F2d 569, 573,* 8th Cir. 1980)

11. The Executive and Judicial branches of the federal government label Americans who challenge the legality of the federal income tax as "tax protesters." (Department of Justice Criminal Tax Manual, "Tax Protestor" section.)

12. United States Supreme Court Chief Judge Taney submitted his protest in a letter to the Secretary of the Treasury. [*See Evans v. Gore*, 253 U.S. 245, 257 (1920)]

13. Letters of protest written to the Secretary of the Treasury by American Citizens are used by the Executive branch of government, and accepted by the Judicial branch of government, as proof of income tax evasion and conspiracy against those who write the letters.