UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-11422-MLW

STEVEN DRURY,

Plaintiff,

v.

THE NEW ENGLAND REGIONAL
COUNCIL OF CARPENTERS,
CARPENTERS LOCAL UNION
NO. 107, THOMAS HARRINGTON,
ART SISKO, SIMON JAMES, and
KENNEDY & ROSSI, INC.,

Defendants.

DEFENDANT KENNEDY & ROSSI, INC.'S
OPPOSITION TO MOTION TO REMAND
AND MOTION TO DISMISS UNDER
RULE 12(b)(6)

## I. INTRODUCTION

Defendant Kennedy & Rossi, Inc. ("Kennedy & Rossi") submits this brief in opposition to Plaintiff's Motion to Remand and in Support of its Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This Court has jurisdiction over Plaintiff's claim against Kennedy & Rossi for violation of the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws. ch. 12, § 11I, because that claim is preempted by Section 301 of the Labor Management Relations Act. Count I of the complaint against Kennedy & Rossi should be dismissed because Plaintiff Steven Drury ("Plaintiff" or "Drury") failed to exhaust his remedies under the collective bargaining agreement between Kennedy & Rossi and the New England Regional Council of Carpenters (the "Union").

## II. PROCEDURAL BACKGROUND

Drury filed a complaint in the Massachusetts Superior Court in Worcester on May 30, 2003, alleging that the defendants, the Union, two Union officials (Messrs. Sisko and James),

and Kennedy & Rossi, violated his rights under the MCRA. The Union and Kennedy & Rossi received a copy of the complaint on July 25, 2003, and the Union timely removed the case to this Court on July 30, 2003, alleging that the state law claims in the complaint are pre-empted by federal labor law. On August 15, 2003, Drury filed a motion to remand this case to the state court. Motions permitting the defendants to file responses to the complaint and oppositions to Plaintiff's motion to remand by September 12, 2003, were subsequently allowed.

### III. FACTUAL BACKGROUND[1]

Drury has been a dues-paying member of the Union for 22 years. Complaint ("Compl.") ¶ 1. The Union and numerous construction companies in Massachusetts, including Kennedy & Rossi, have entered into a collective bargaining agreement (the "Agreement") concerning the terms and conditions of employment of Union members employed by companies that have signed the Agreement. *See* Compl. ¶ 6.[2]

Drury applied for work with Kennedy & Rossi in June 2000. Compl. ¶ 13.[3] Consistent with Kennedy & Rossi's interpretation of Article 8, Section 5 of the Agreement,[4] Kennedy &

---

[1] For purposes of Kennedy & Rossi's motion to dismiss for failure to state a claim under Rule 12(b)(6), the facts alleged in the complaint are assumed to be true. *Beddal v. State Street Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998).

[2] Paragraph 6 of the Complaint states, in pertinent part, that "Kennedy and Rossi are a local state business and performing such work under contract with brotherhood of Carpenters 'NERCC' in the Commonwealth of Massachusetts."

[3] Paragraph 13 of the Complaint states, in pertinent part, that "On or about June 12, 2000, Drury was sent to Defendant Kennedy and Rossi project / job site."

[4] Article 8, Section 5 of the Agreement states, in pertinent part, that "Carpenters shall not be required to fill out or sign any forms, whether before or after being hired, except those required by Federal and State law." A copy of Article 8 of the Agreement is attached hereto as Exhibit A. The Court may consider the terms of the Agreement, which Drury's complaint repeatedly references, in ruling on Kennedy & Rossi's Rule 12(b)(6) motion. *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) ("When a complaint relies upon a document, the authenticity of which is not challenged, such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss").

Rossi asked Drury to complete a Form I-9 and a Form W-4 when he began work. Compl. ¶ 13.[5] Kennedy & Rossi told Drury that he could not remain employed with the company if he did not provide his Social Security account number ("SSN") on a Form I-9 and Form W-4. Compl. ¶ 13.[6] Drury disagreed with Kennedy & Rossi's interpretation of the Agreement and refused to provide his SSN to Kennedy & Rossi. Compl. ¶ 13.[7]

Drury spoke to the Union about Kennedy & Rossi's request that he provide his SSN to the company. During one of these discussions, Mr. Sisko told Drury that the Union interpreted Article 8, Section 5 of the Agreement to mean that a Union member must provide his SSN in completing forms required by federal law, including Form I-9 and Form W-4. Compl. ¶ 9.[8] As a result of Drury's persistent refusal to provide his SSN to Kennedy & Rossi, his employment with the company was terminated. Compl. ¶ 13.[9]

The Agreement between the Union and Kennedy & Rossi includes a comprehensive provision for resolving disputes with employees. See Exhibit B (Agreement, Article 26, "Grievance and Arbitration"). Under the grievance process specified in the Agreement, Union members must submit complaints concerning their employment or termination to the Union.

---

[5] Paragraph 13 of the Complaint states, in pertinent part, that "Kennedy and Rossi demanded that I give them a SS#."

[6] Paragraph 13 of the Complaint states, in pertinent part, that "Kennedy Threaten Drury of job lost if he did not give his SS# and sign forms ... Kennedy and Rossi by use of Coercion told Drury Better sign w-4 the right way and provide his SS# or he is out of here."

[7] Paragraph 13 of the Complaint states, in pertinent part, that "Drury did refuse but only before signing such forms w-4 and I-9 forms but did not provide his SS#."

[8] Paragraph 9 of the Complaint states, in pertinent part, that "Sisko has stated that under art 8 section 5 of the Carpenters agreement Sisko Can and does compel a member to sign w-4 and provide information for I-9 forms including SSA or SS#").

[9] Paragraph 13 of the Complaint states, in pertinent part, that "Kennedy and Rossi did not give Drury any recourse other then to comply with the will of Kennedy and Rossi   Drury call Union Hall. Drury was refuse union representation twice and then was layoff and told to leave the project."

Acting on the employee's behalf, the Union must first make an informal attempt to resolve the dispute with the employer. Exhibit B (Agreement, Article 26, Section 1). If the matter cannot be resolved informally, the employee and the employer must submit the dispute to an arbitrator designated in the Agreement. Exhibit B (Agreement, Article 26, Section 2).

The Union did not file a grievance with Kennedy & Rossi concerning Drury's termination, nor did it submit the dispute to arbitration. Compl. ¶ 13.[10] Nearly three years after Drury's employment with Kennedy & Rossi ended, he filed the complaint in this action.

## IV.   ARGUMENT

Drury asserts that this Court lacks subject matter jurisdiction over this case. While his motion to remand does not clearly articulate the basis for this claim, it appears to stem from his observation that all of the parties reside or are located in Massachusetts. In addition, the Court may deem Drury's motion to raise the question of whether the MCRA claims in the Complaint are pre-empted by federal labor law.

This Court has federal question jurisdiction over this case because resolving the MCRA claim against Kennedy & Rossi would require a court to interpret the collective bargaining agreement with the Union. Specifically, a court would need to determine the meaning of Article 8, Section 5 of the Agreement in order to determine whether Drury had been deprived of a secured state or federal right. The MCRA claim against Kennedy & Rossi should be dismissed because Drury failed to exhaust his remedies under the Agreement.

---

[10] Paragraph 13 of the Complaint states, in pertinent part, that "The Union agents did nothing to stop the injustice happening to Drury."

4

A. **This Court Has Jurisdiction Over This Case Under Section 301 Of The Labor Management Relations Act**

Even where a federal claim is not alleged on the face of the complaint, a "state law claim which is subject to complete preemption under Section 301 of the [Labor Management Relations Act] is considered a claim arising under federal law within the district court's jurisdiction." *Magerer v. John Sexton & Co.*, 912 F.2d 525, 528 (1st Cir. 1990). Here, Drury's MCRA claim against Kennedy and Rossi is preempted by Section 301 because resolving that claim would require a court to interpret the Agreement that governed Drury's employment with Kennedy & Rossi.

1. **Section 301 Preempts State Law Claims That Require The Interpretation Of A Collective Bargaining Agreement**

Section 301 provides that the federal courts have jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . ., or between any such labor organizations." 29 U.S.C. § 185(a). In addition to conferring jurisdiction on federal courts to resolve disputes concerning collective bargaining agreements, Section 301 "completely preempts a state law claim if the resolution of the claim necessitates analysis of, or substantially depends on the meaning of, a collective bargaining agreement." *Quesnel v. Prudential Ins. Co.*, 66 F.3d 8, 10 (1st Cir. 1995) (citing *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 405-406; *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) and *Magerer, supra*, 912 F.2d at 528).

The First Circuit has summarized the rationale for the broad preemptive effect of Section 301:

> The explanation [for Section 301 preemption] lies in the Supreme Court's concern to enforce arbitration clauses, almost always a feature of labor contracts. If judges construed labor agreements in the first instance, the Court believed that the arbitration process

would be undermined, and there might be divergent readings of the labor agreement and interference with the grievance process itself.

*Martin v. Shaw's Supermarkets, Inc.*, 105 F.3d 40, 42 (1st Cir. 1997) (citing *Lividas v. Bradshaw*, 512 U.S. 107, 122-124 (1994) and *Allis-Chalmers, supra*, at 219.

A claim can be preempted even if the complaint does not explicitly allege that the employer breached a duty arising out of a collective bargaining agreement. *Flibotte v. Pennsylvania Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997) (negligence claim preempted by Section 301). A state law claim is preempted by Section 301 as long as evaluation of that claim "is inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chalmers, supra*, 471 U.S. at 213.

### 2. Resolving Drury's MCRA Claim Would Require A Court To Interpret The Agreement Between Kennedy & Rossi And The Union

Drury has pleaded his claim against Kennedy & Rossi in terms that purport to be independent of the Agreement. Specifically, Drury alleges he was discharged in violation of the MCRA. The First Circuit has made it clear that such attempts to circumvent the preemptive effect of Section 301 must fail. In *Flibotte, supra*, 131 F.2d at 26, the plaintiff alleged that his employer, Pennsylvania Truck Lines ("PTL"), negligently terminated his employment after he refused to take a drug test. The First Circuit held that "[e]ven assuming ... that PTL allegedly breached duties derived from a source extrinsic to the collective bargaining agreement, the resolution of the negligence claims nonetheless depends upon the interpretation of that agreement." *Id.* To prevail on his negligence claim, Flibotte would have had to show that PTL violated a duty it owed him. If, however, PTL had discharged Flibotte consistent with PTL's rights under the collective bargaining agreement with Flibotte's union, Flibotte's negligence claim would have failed. In concluding that the negligence claim was preempted, the court

6

commented that a plaintiff "cannot skirt section 301 preemption by the simple expedient of recharacterizing" the duties his employer owes him. *Id.* at 27.

In this case, Drury cannot avoid Section 301 preemption simply by pleading his claim as a cause of action for violation of the MCRA. To prove an MCRA claim, a plaintiff must allege that he had a federal or state right, *Perkins v. Commonwealth of Mass.*, 52 Mass. App. Ct. 175, 181, 752 N.E.2d 761, 767 (2001), and that the defendant interfered with that right. *Buster v. George W. Moore, Inc.*, 438 Mass. 635, 738 N.E.2d 399, 408 (2003). To determine whether Drury could prove his case, a court would need to analyze (1) whether Article 8, Section 5 of the Agreement permitted Kennedy & Rossi to require Drury to provide his SSN as a condition of employment; (2) whether the terms of the Agreement are inconsistent with any of Drury's state of federal rights;[11] and (3) whether Kennedy & Rossi's insistence upon Drury's compliance with its understanding of the Agreement interfered with any of Drury's state of federal rights. In short, a court could not possibly rule on the merits of Drury's claim against Kennedy & Rossi without first analyzing the terms of the Agreement. Because Drury's MCRA claim is "inextricably intertwined" with the terms of a collective bargaining agreement, it is preempted by Section 301.

---

[11] In assessing whether the Agreement violated a state or federal right, Drury would need to establish the dubious proposition that conduct which Kennedy & Rossi was *required* to undertake under federal law (namely, obtaining an employee's SSN on a Form I-9 and Form W-4), constitutes a violation of Drury's state or federal rights. *See* 8 C.F.R. § 274a.2 (requiring that a person or entity that hires an individual for employment ensure that the individual complete Section 1 on the Form I-9 entitled "Employee Information and Verification"); 26 C.F.R. § 31.6011(b)-2 (requiring employee, on the day he enters the employ of any employer for wages, to show his Social Security card to his employer or to advise his employer of such number and requiring the employer to enter the number in his records).

**B.    Drury's Claim Against Kennedy & Rossi Must Be Dismissed Because He Failed To Exhaust The Remedies Provided Under The Agreement**

Drury's claim against Kennedy & Rossi must be dismissed because he failed to exhaust the remedies available to him under the Agreement. Claims preempted by Section 301 are "subject to the requirement of exhaustion of the grievance procedures provided for in the collective bargaining agreement." *Magerer, supra*, 912 F.2d at 531 (citing *Vaca v. Sipes*, 386 U.S. 171 184 (1967)). As noted above, it is undisputed that Drury failed to pursue the remedies available to him under the Agreement; the Union did not file a grievance on his behalf or attempt to arbitrate the dispute concerning his termination under the terms of the Agreement. Compl. ¶ 13. Therefore, Drury's MCRA claim against Kennedy & Rossi must be dismissed.

## V.    CONCLUSION

For the reasons set forth above, this Court should determine that it has jurisdiction over the subject matter of this action and that Kennedy & Rossi's motion to dismiss under Rule 12(b)(6) should be granted. This court has jurisdiction because Drury's MCRA claim against Kennedy & Rossi is preempted by Section 301 of the Labor Management Relations Act. Count I of Drury's Complaint against Kennedy & Rossi should be dismissed because the grievance procedures available to him under the Agreement were not pursued by the Union.

Respectfully submitted,

KENNEDY & ROSSI, INC.
By its attorneys,

HOLLAND & KNIGHT LLP

_____
Paul M. James (BBO # 552342)
Douglas W. Phillips (BBO # 636197)
10 St. James Avenue
Boston, Massachusetts 02116
(617) 523-2700

Dated: September 12, 2003

*I hereby certify under the pains and penalties of perjury that this document was served upon counsel for all parties in this case on September 12, 2003 by Hand / by Mail*

8

Case 4:03-cv-11422-FDS    Document 37    Filed 09/12/2003    Page 9 of 16

# ARTICLE 8

## Total Wages, Overtime and Other Payment Provisions

Section 1.

A. Wages -- The rate of wages per hour for all journeymen carpenters covered by this Agreement working within the territorial jurisdiction of this Agreement as outlined in Article 4, including those journeymen carpenters performing renovation, rehabilitation, or alteration on existing wood-frame buildings, shall be as outlined in attached Schedule A:

Boston Area:    (see Schedule A)

Eastern Area:   (see Schedule A)

The wage and benefit rate of pay for the area covered by Locals 624 and 1305 will be the same as the Eastern Area. The Counties of Duke and Nantucket's wage and benefits rate will be equal to the Boston Area, effective April 1, 2002.

Pension Contributions shall not be required for first-year apprentices.

## RESIDENTIAL
## WOOD FRAME RATES

Wages and Benefits will be as set forth in the Local 723 Agreement.

### Prevailing Rate Jobs - Wage Carry Over

On prevailing wage rate jobs, where there is a scheduled contractual wage increase which has not been included in the prevailing wage rates provided to all bidders, the Employer shall be permitted to work at the posted wage rate for a period, not to exceed twelve months from the date the project is bid; provided, however, that the Employer shall be required, regardless of the posted rate, to pay the contractual rate for all fringe benefits.

### MCAP Contribution

Any Employer who does not pay the MCAP contribution must pay that amount as an additional payment to the Boston Carpenters Apprenticeship and Training Program.

B.     Definitions (see Schedule A)

W       -   Wages
H/B     -   Health Benefits Fund - See Articles 10 (A) and X (B)
P       -   Pension Fund - See Articles 10 (A) and X (B)
A       -   Annuity Fund - See Articles 10 (A) and X (B)
ATF     -   Boston Carpenters Apprenticeship and Training Fund - See Article 11

| | | |
|---|---|---|
| LMP | - | Carpenters Labor Management Program - See Article 12 |
| MCAP | - | Massachusetts Construction Advancement Program - See Article 13 |
| NECTP | - | New England Carpenters Training Program – See Article 14 |
| NHSF | - | National Health and Safety Fund - See Article 10 (A) |
| NATF | - | National Apprenticeship and Training Fund – See Article 10 (A) |
| D | - | Working Dues deduction from net wages after taxes - See Article 9 |
| V/H | - | Vacation/Holiday Fund deduction from net wages after taxes – See Article 10 (A) |
| NLMP | - | National Labor Management Program |

C.  Special Conditions

It is mutually agreed that each Chairman will form a committee of Union and Employer representatives to meet within sixty (60) days to discuss ways to mutually explore lower rates and/or special conditions to compete on certain work in each Local Union or District Council. The Union agrees that it shall discuss with the Employer means and methods, including productivity programs, which will permit the Employer to be more competitive, thereby creating more work opportunities for Union members.

D.  Allocation to Fringes

The Union shall have the option to divert money from wages to any of the funds provided for in this Agreement or to transfer contributions among any of these funds upon sixty (60) days' prior written notification to the Associations signatory hereto.

E.  Floor Covering, Millwright, Pile Driver/ Dock Builder/ Tender/ Diver, Wood Framer Rates and Conditions

The wage rates, terms, and conditions of the Locals 56, 723, 1121, 2168 agreements shall apply to signatories of this Agreement when performing work that is covered by these agreements.

F.  Heavy & Highway Work (only)

In the event there is lost time during the regular workweek due to inclement weather, then Saturday may, at the option of the Employer, with the approval of the Business Representative, be worked as a make-up day at straight time. Approval of the Business Representative will not be unreasonably withheld. Any time worked on Saturday, which is in excess of forty (40) hours for the week, shall be paid at the overtime rate of one and one-half (1 1/2) times the basic wage rate. Make-up time for Saturday will be at least eight (8) hours in duration and shall not be mandatory. If any other person or trade on the project receives premium time for that Saturday, then all carpenter employees on that job shall receive premium pay. First preference for Saturday make-up shall be given to carpenter employees on the jobsite. If and when all of the Basic Building Trades Unions agree that this provision applies to work other than heavy and highway work, the parties to this agreement will implement this provision with respect to that work.

Section 2.  Overtime

A.  Work Outside the Regular Workday

Work performed on all construction outside the agreed-upon regular workday or shift hours, Monday through Friday, shall be paid for at the overtime rate of time and one-half (1 1/2) the basic wage rate for the first four (4) hours of overtime worked each day. Overtime, beyond four (4) hours, Monday through Friday, shall be paid at double the basic wage rate. Saturdays shall be paid for at the overtime rate of time and one-half (1 ½) the basic wage rate for the first ten (10) hours worked. All work on Saturday beyond ten (10) hours shall be paid at double the basic wage rate. Sundays and Holidays specified in this agreement shall be paid for at the overtime rate of double the basic wage rate.

B.  Lunch Period

An employee who works on a concrete placement during the regularly scheduled lunch period shall not be paid overtime for that period provided said employee is given between the hours of 11 a.m. and 1 p.m., or the corresponding period of a second- or third-shift operation, a one-half (1/2) hour non-paid lunch period. All other work performed during the regular lunch-hour time shall be paid at the appropriate overtime rate, and employees involved shall have one-half (1/2) hour for lunch.

C.  Notification of Overtime

The Employer shall notify the Union as soon as the Employer is aware of the need for overtime when any overtime, as defined by this Agreement, is to be worked on the job.

D.  Equal Distribution

If overtime work is performed, it shall be done by carpenters working on the job prior to the overtime period. Such overtime should be divided equally among the carpenter employees on the job.

Section 3.  On "residential renovations" work, the Employer shall pay 90 percent of the Boston wage rate and 100 percent of the Eastern Area benefit contributions as provided for in this Agreement. All other terms and conditions set forth in this Agreement shall apply to such work. "Residential renovations" shall be limited to carpentry work performed in the renovation of a residential unit in Massachusetts, where the work to be performed is on no more than three residential units in a building.

Section 4.  Shop and millwork, exclusive of regular milling, shall be paid for at the basic and overtime rates as specified in this Agreement for regular carpentry.

Section 5.  Carpenters are to be paid weekly, and in no case shall more than three (3) days' pay be withheld. Carpenters are to be paid in cash on the job during working hours. Payment

may be made by company payroll check not later than Thursday except that payment is to be made no later than Wednesday when a holiday falls on Friday.

When payment is made by check, the Employer shall make suitable provisions locally for cashing of checks without charge to the employee. The Union may require an Employer to pay in cash or certified check whenever a check is not honored or whenever there is doubt of the ability of the Employer to meet its financial obligations under this agreement. In the event that any wage check is not honored by the bank on which it is drawn for reason of insufficient funds, there shall be a penalty of one day's pay for each check drawn. Any charges incurred by the employee because of a bad check will be reimbursed by the employer.

The Employer, when paying by check, shall have a detachable stub to be retained by the employee. The Employer shall include on the check stub and/or on the pay envelope the following information:

> Name of Employer - Name or Identification of Employee - number of hours worked - social security deduction - federal withholding deduction - state withholding deduction - net pay of employee - dates covered by pay.

The Employer shall furnish to each employee a statement in writing giving the period of his or her employment and his or her gross earnings upon written request of employee within thirty (30) days.

Carpenters shall not be required to fill out or sign any forms, whether before or after being hired, except those required by Federal and State law, with the exception of acknowledging the receipt of copies of company policies regarding sexual harassment and/or safety.

Section 6.    Carpenters who do not receive their pay before the end of their normal work day and who are required to wait beyond quitting time for their pay shall be paid extra for the waiting time at the straight-time rate.

Section 7.    Carpenters who voluntarily quit are to be paid not later than the first regular payroll day following.

Section 8.    Carpenters shall be paid during their working hours and at the station of their work. Otherwise, they shall be allowed not less than fifteen (15) minutes to reach the job site office of the employer to get the pay.

## ARTICLE 9

### Dues Assessment

Section 1. The employer shall deduct 2.5 percent of the total package paid to an individual carpenter (or any other amount subsequently and lawfully decided) for each hour worked by each carpenter working within the territorial jurisdiction of this Agreement. The employer shall

Expires 8/31/2005                              - 17 -                         Massachusetts Carpenters

Case 4:03-cv-11422-FDS    Document 37    Filed 09/12/2003    Page 14 of 16

5.    The failure of the Employer to pay wages provided herein

## ARTICLE 25

### Breach of Agreement

Only the Employer who violates the terms of this Agreement shall be liable for such violations, and neither the Associations nor the other members of the Associations shall be held liable therefore. Liability of the Associations hereunder shall be limited to the case of a violation hereof by the Association. In the event any member of the Associations violate the terms of this Agreement, the Union shall not take punitive measures against Associations or any members thereof except the offending member.

## ARTICLE 26

### Grievance and Arbitration

Section 1.    In the event a grievance arises, other than jurisdictional disputes, a meeting shall be held between the contractor or its accredited representatives and the Union. For Association employers, if a settlement is not reached at this point, the parties shall contact the Association of which the contractor is a member. A representative of the Association shall confer with representatives of the Union and the contractor to endeavor to settle the dispute. Any grievance not filed in writing within sixty (60) days from the day of the occurrence on which the grievance is based, shall be forever barred. If the dispute is not settled at this conference, it shall be subject to arbitration.

Section 2.    A Committee shall be appointed as an arbitration board to consist of not more than two (2) members from the Union and not more than two (2) members from the Association to who will be referred any grievance involving an interpretation of this contract including grievances concerning contractors who are not members of the Associations. Association members shall have the option of waiving the joint board step and proceeding directly to the American Arbitration Association. The association members must exercise this option within seven (7) days of the grievance. The board shall meet to consider and act on the matter within three (3) days, and the decision of the board shall be final and binding on both parties. The board shall make its decision within seventy-two (72) hours. In the event of the failure of the board to arrive at a solution, the case shall be referred to one of the of following two arbitrators— Mark Irvings and Larry Katz -- in rotating order, and the arbitration shall be conducted under the voluntary labor arbitration rules of the American Arbitration Association, and the decision of the umpire shall be final and binding on both parties. The board of arbitration or umpire shall not have the power to add to, subtract from, or modify any term of this agreement. The cost of the arbitration shall be borne equally by both parties to the grievance. The time deadlines may be extended by agreement between the Union and the Association. A non-association employer whose actions are the subject of a Grievance shall have no say in extending the deadlines.



# HOLLAND & KNIGHT LLP

10 St. James Avenue
Boston, Massachusetts 02116

617-523-2700
FAX 617-523-6850
www.hklaw.com

Annapolis        San Francisco
Atlanta          Seattle
Bethesda         Tallahassee
Boston           Tampa
Bradenton        Washington, D.C.
Chicago*         West Palm Beach
Fort Lauderdale
Jacksonville     International Offices:
Lakeland         Caracas**
Los Angeles      Helsinki
Miami            Mexico City
New York         Rio de Janeiro
Northern Virginia São Paulo
Orlando          Tel Aviv**
Portland         Tokyo
Providence
St. Petersburg   *Holland & Knight LLC
San Antonio      **Representative Office

**DOUGLAS W. PHILLIPS**
617-854-1402

September 12, 2003

Internet Address:
dougphillips@hklaw.com

**HAND DELIVERED**

Clerk's Office
United States District Court
 for the District of Massachusetts
One Courthouse Way
Boston, MA 02110

Re:  Steven Drury v. The New England Regional Council of Carpenters, et al.
     <u>Civil Action No. 03-11422-MLW</u>

Dear Sir/Madam:

Enclosed for filing and docketing please find Defendant Kennedy & Rossi, Inc.'s Opposition to Motion to Remand and Motion to Dismiss Under Rule 12(b)(6).

Very truly yours,

*Douglas W. Phillips (dic)*

Douglas W. Phillips

Enclosure
cc:  Mr. Stephen Drury
     Christopher N. Souris, Esq.